[No. F010186. Fifth Dist. June 8, 1989.]

MID-CENTURY INSURANCE COMPANY, Plaintiff and Appellant,
v.
DEBBIE BASH, Defendant and Respondent.

COUNSEL

LeBeau, Thelen, Lampe & McIntosh, Dennis R. Thelen and J. Nile Kinney for Plaintiff and Appellant.

Schurmer & Drane and Curtis C. Simpson III for Defendant and Respondent.

OPINION

BEST, Acting P. J.—Appellant Mid-Century Insurance Company (Mid-Century) filed an action for declaratory relief against its insured, Mario Maldonado, and Debbie Bash (Wife or respondent), a plaintiff in an underlying action for personal injuries. The trial court ruled, upon stipulated facts, that Mid-Century's policy provided separate "per person" policy limits of $15,000 to cover Bash's claim for loss of consortium occasioned by

injuries to her husband as a result of an accident with Maldonado. Mid-Century appeals from that judgment.

▆ The sole legal issue presented is whether Mid-Century's policy provides separate coverage under the "per occurrence" limits of liability for damages for loss of consortium claimed by Wife, following a settlement of "per person" limits with her husband.

We hold the above policy provisions to be unambiguous, clearly including any loss of consortium claim in the "each person" liability limits for injury to any one person in any occurrence. ▆ We further find that the phrase "financial responsibility law" clearly refers to a specific body of statutory law, and that under the California Financial Responsibility Law there is no requirement that separate limits be provided for loss-of-consortium claims. We therefore reverse the judgment and order that a new judgment be entered granting declaratory relief to Mid-Century as prayed for in its complaint.

## STATEMENT OF FACTS

The parties agree that the matter should be decided on facts set forth in pertinent portions of their "Stipulated Statement of Undisputed Facts" as follows: "'4. Prior to October 12, 1985, plaintiff Mid-Century Insurance Company provided public liability insurance under Policy No. 95 11612 83 90 to defendant Mario Maldonado, which provided bodily injury coverage in the amount of $15,000.00 per person and $30,000.00 per occurrence.

"'5. The policy described as the insured automobile a 1981 Corvette, I.D. #379.

"'. . . . . . . . . . . . . . . . . . . . .

"'7. On or about October 12, 1985, a collision occurred in Bakersfield, California, between the automobile owned and operated by defendant Mario Maldonado and a motorcycle owned and operated by James Paul Bash.

"'8. On or about November 15, 1985, in the Kern County Superior Court, Action No. 192967, a personal injury lawsuit was filed against defendant Mario Maldonado by James Paul Bash and defendant Debbie Bash claiming financial loss, medical expenses, and loss of consortium.

"'9. Plaintiff Mid-Century Insurance Company reviewed the claim of James Paul Bash and issued a settlement draft in the amount of $15,000.00 under the 'per person' limits of the policy described above.

" '10.  On or about April 21, 1986, a Release and Dismissal of Kern County Superior Court action 192967 was filed with respect to the action of James Paul Bash only.

" '11.  On or about May 16, 1986, defendant Debbie Bash, in her capacity as plaintiff, filed an offer to compromise her claims against defendant Mario Maldonado for an additional $15,000.00, pursuant to *California Code of Civil Procedure* Section 998. Plaintiff Mid-Century Insurance Company, on behalf of its insured, Mario Maldonado, did not accept the settlement demand and maintains that under the terms and conditions of the insurance policy, there is no coverage for the loss of consortium claim, as more fully set forth in the Motion for Summary Judgment. At all times material herein, defendant Debbie Bash has maintained that coverage is afforded for the loss of consortium claim held by her. That, further, a question of law is presented solely by the within circumstances, to wit, the proper construction to be given to the terms and conditions set forth in the insurance policy . . . .' " The relevant policy provisions state: " 'Limits of Liability,

" '1.  The bodily injury liability limit for "each person" is the maximum for bodily injury sustained by one person in any occurrence. Any claims for loss of consortium or injury to the relationship shall be included in this limit. If the financial responsibility law of the place of the accident treats the loss of consortium as a separate claim, financial responsibility limits will be furnished.' . . ."

## DISCUSSION

■■■ Wife claims that because the law of California recognizes a spouse's claim for loss of consortium as an injury separate from that sustained by the accident victim, Mid-Century is obligated, under the policy provisions cited above, to provide separate "per person" limits of coverage for her damages for loss of consortium. Mid-Century, on the other hand, argues that the clause is plain and unambiguous and clearly excludes separate "per person" coverage for a loss-of-consortium claim except in jurisdictions where separate coverage is required under the applicable "financial responsibility law."

■■■ "Where no dispute surrounds material facts, interpretation of an insurance policy presents solely a question of law." (*Hauser* v. *State Farm Mut. Auto. Ins. Co.* (1988) 205 Cal.App.3d 843, 846 [252 Cal.Rptr. 569].)

We first consider the following policy language: "The bodily injury liability limit for 'each person' is the maximum for bodily injury sustained by one

person in any occurrence. Any claims for loss of consortium or injury to the relationship shall be included in this limit."

There is no dispute that under the decisional law in California, a wife's claim for loss of consortium is separate and distinct from her husband's bodily injury claim. (*Lantis* v. *Condon* (1979) 95 Cal.App.3d 152, 159 [157 Cal.Rptr. 22].) ■ However, an insurance company can limit the coverage of a policy as long as the limitation conforms to the law and is not contrary to public policy. (*Lumberman's Mut. Cas. Co.* v. *Wyman* (1976) 64 Cal.App.3d 252, 259 [134 Cal.Rptr. 318].) Vehicle Code section 16056, part of California's Financial Responsibility Law, provides in pertinent part: "(a) No policy . . . shall be effective . . . unless the policy . . . is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, of not less than fifteen thousand dollars ($15,000) because of bodily injury to or death of one person in any one accident, and, subject to such limit for one person, to a limit of not less than thirty thousand dollars ($30,000) because of bodily injury to or death of two or more persons in any one accident, . . ." An insurer may "limit liability in accidents where loss of consortium damages are sought," if express policy language provides "that such damages are subject to the 'per person' limitation." (*Abellon* v. *Hartford Ins. Co.* (1985) 167 Cal.App.3d 21, 33 [212 Cal.Rptr. 852].) That is precisely what Mid-Century has done here.

■ A standard form of insurance policy is governed by the ordinary rules of interpretation of contracts. (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 682, p. 616.) "Although ambiguities or uncertainties in an insurance policy must be resolved against the insurer, nevertheless, the policy must be given a reasonable interpretation and the words used are to be given their common, ordinary and customary meaning." (*United Services Automobile Assn.* v. *Warner* (1976) 64 Cal.App.3d 957, 962 [135 Cal.Rptr. 34]; see also *Perkins* v. *Fireman's Fund Indem. Co.* (1941) 44 Cal.App.2d 427, 431 [112 P.2d 670].) Where there is no doubt in the meaning of the policy language, courts will not strain to find ambiguities. (*Hauser* v. *State Farm Mut. Auto. Ins. Co., supra,* 205 Cal.App.3d 843, 846; *Barrett* v. *Farmers Ins. Group* (1985) 174 Cal.App.3d 747, 752 [220 Cal.Rptr. 135].) Neither will the courts construe exclusions strictly against the insurer absent some ambiguity. (*Allstate Ins. Co.* v. *Chinn* (1969) 271 Cal.App.2d 274, 279 [76 Cal.Rptr. 264].) Exclusionary clauses which meet the plain, clear and conspicuous requirement will be given effect. (See *Meritplan Ins. Co.* v. *Woollum* (1975) 52 Cal.App.3d 167, 170 [123 Cal.Rptr. 613].)

■ The policy language under scrutiny here is plain and straightforward. It sets the "per person" limit for injury sustained "by one person in any occurrence" as including claims for loss of consortium or injury to the

relationship. In *United Services Automobile Assn.* v. *Warner, supra,* 64 Cal.App.3d 957, 961, the court interpreted policy language similar to that considered here: " 'The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of the company's liability for all damages, including damages for care and loss of services, arising out of bodily injury sustained by one person as the result of any one occurrence; . . . ' " In determining whether the loss of consortium suffered by the husband constituted a separate bodily injury within the meaning of the insurance policy, the court found the language "setting forth the limits of liability is clear and free from ambiguity. . . . Clearly, the words 'all damages' includes the loss of consortium which loss necessarily arises out of the bodily injury sustained by one person, the injured spouse." (*Id.* at p. 962.) The court further noted: "The cause of action for loss of consortium does not arise out of a bodily injury to the spouse suffering the loss; it arises out of the bodily injury to the spouse who can no longer perform the spousal functions. It is the loss of conjugal fellowship, affection, society and companionship which gives rise to the cause of action. (*Rodriquez* v. *Bethlehem Steel Corp., supra,* 12 Cal.3d 382, 405-406 [115 Cal.Rptr. 765, 525 P.2d 669].)" (*Id.* at p. 964.) *Warner* was distinguished in *Abellon* v. *Hartford Ins. Co., supra,* 167 Cal.App.3d 21, relied on by respondent, as: " . . . unpersuasive and not controlling here because [it contains] policy language which is dramatically different from the language in Hartford's policy. *The Warner 'per person' limitation specifically defines 'all damages' as including loss of 'services'; Hartford's 'per person' limitation contains no such qualifying phrase.* Hence, [Hartford's insured] was given no notice when it purchased the policy that loss of consortium damages fell within the purview of the 'per person' limitation." (*Id.* at pp. 30-31, italics in original.) The court concluded: "If Hartford wants to limit liability in accidents where loss of consortium damages are sought, it should expressly provide that such damages are subject to the 'per person' limitation." (*Id.* at p. 33.) Here, Mid-Century has expressly so provided by stating in the "per person" limitation, "Any claims for loss of consortium or injury to the relationship shall be included in this limit."

In *Hauser* v. *State Farm Mut. Auto. Ins. Co., supra,* 205 Cal.App.3d 843, 845, the court interpreted a policy provision providing limits of liability for: " ' "Bodily Injury, Each Person [$25,000], Each Accident [$50,000]." Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person*. *"Bodily injury* to one *person"* includes all injury and damages to others resulting from this *bodily injury.* . . .' " Rejecting Wife's claim that she was a separate "person" from her husband, entitled to compensation for loss of consortium under the policy from the "each accident" limits of coverage, the court concluded that "Wife's loss of consortium resulted from her husband's injuries without which wife would have no

claim at all. Under the policy provisions, wife's claim is compensable only under the 'each person' limit applicable also to her husband's claim." (*Id.* at pp. 846-847, fn. omitted.)

Wife would have no claim under the policy for damages for loss of consortium but for the injuries sustained by James Bash in the accident with Maldonado. Therefore, the loss of consortium is a loss sustained because of injuries to one person, and the "per person" limits of liability apply. ▮ Respondent does not seem to seriously dispute appellant's interpretation of this portion of the policy, but instead argues that the qualifying sentence—"If the financial responsibility law of the place of the accident treats the loss of consortium as a separate claim, financial responsibility limits will be furnished"—requires that the loss-of-consortium claim be subject to the higher "per occurrence" limit.

Respondent argues that because California law treats a loss-of-consortium claim as a separate and personal injury, the qualifying clause above requires separate bodily injury limits. Respondent ignores the reference to "financial responsibility law" and instead relies on California decisional law recognizing a separate cause of action for a spouse's loss of consortium. Respondent erroneously interprets the policy provision according to the general laws of this state without considering the very specific reference to statutory law commonly referred to as the "financial responsibility law."

To interpret the policy provision as respondent does would render the words "financial responsibility" mere surplusage. "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641; 1 Witkin, Summary of Cal. Law, *supra,* Contracts, § 686, p. 619.) Where a special meaning is given to words of a contract by usage, that meaning must be followed. (*Op. cit. supra,* at § 685, pp. 618-619.) There are numerous references to financial responsibility laws in the policy, as well as references to other bodies of law, clearly providing the insured with notice that the reference considered here was more specific than that encompassed by California law in general.

The subject insurance policy provides under the heading "Out of State Coverage" that "An insured person may become subject to the *financial responsibility law,* compulsory insurance law or similar law of another state or in Canada." (Italics added.) An exclusion of a vehicle under certain employment conditions provides: "This exclusion does not apply to any other person who does not have other insurance available to him with limits equal to at least those of the California Financial Responsibility Law." Elsewhere in the policy references are made to "the state motor vehicle

law," and the "laws of California." Respondent cannot reasonably argue that the language of the policy, taken as a whole, does not make it clear that "financial responsibility law" refers to a discrete body of statutory law more particularized than the "laws of California."

Respondent does not specifically claim that the reference to "financial responsibility law" is ambiguous, but does argue "there is no magic in the words." Respondent contends that "nothing in the California Vehicle Code" changes the fact that loss-of-consortium claims are separate claims. Division 7 of the Vehicle Code is entitled "Financial Responsibility Laws." The legislation was enacted in part to promote public policy that "those owning or operating motor vehicles on the streets or highways of this state shall be financially capable of providing recompense to those who may be injured in their person or property by use of such motor vehicles." (Stats. 1974, ch. 1409, § 1, p. 3085.) The legislative history refers generally to "financial responsibility laws." (*Ibid.*) Such references are not uncommon in California case law. (See *Jordan* v. *Consolidated Mut. Ins. Co.* (1976) 59 Cal.App.3d 26, 42, 47 [130 Cal.Rptr. 446]; *Billington* v. *Interinsurance Exchange* (1969) 71 Cal.2d 728, 741, 742, 743 [79 Cal.Rptr. 326, 456 P.2d 982]; *Allstate Ins. Co.* v. *Chinn, supra,* 271 Cal.App.2d 274, 281.) As the court noted in *Hauser*: "The case before us . . . does not involve tort rules for loss of consortium. Rather, it involves an interpretation of the risks State Farm and its policyholder assumed when State Farm issued its policy." (*Hauser* v. *State Farm Mut. Auto. Ins. Co., supra,* 205 Cal.App.3d at p. 849.) Financial responsibility laws have nothing to do with a litigant's basic right to recover for damages, but only address the means through which monetary protection can be secured for legally cognizable claims. Respondent simply fails to recognize the distinction.

Admittedly, the policy should be read as a layman might read it and not as it might be analyzed by an attorney or insurance expert. (*Abellon* v. *Hartford Ins. Co., supra,* 167 Cal.App.3d 21, 31; *Lumberman's Mut. Cas. Co.* v. *Wyman, supra,* 64 Cal.App.3d 252, 259.) However, a court will not "cast upon the insurance company liability it has not assumed." (*Barrett* v. *Farmers Ins. Group, supra,* 174 Cal.App.3d 747, 752.) The concept of "loss of consortium" is no less sophisticated than the concept of "financial responsibility law." If the policyholder could be said to have an understanding as to coverage for "loss of consortium," he must similarly be charged with an understanding of what was referred to as "financial responsibility laws." All California motorists who have acquired insurance coverage for their automobiles are presumably aware of the existence of financial responsibility laws. Respondent points to nothing in California's Financial Responsibility Law (Veh. Code, § 16000 et seq.) which treats loss of consortium as a separate claim, and we find no such treatment. To the contrary,

Vehicle Code section 16056, subdivision (a), requires only a limit "of not less than fifteen thousand dollars ($15,000) because of bodily injury to or death of one person in any one accident, . . ."

The subject policy further provides: "We will not defend any suit or make additional payments after we have paid the limit of liability for the coverage." Because the subject policy provides no separate coverage for Wife's loss-of-consortium claim, Mid-Century's payment of the full per person policy limits to Mr. Bash discharged any further obligations under the policy, including the obligation to defend Mr. Maldonado. (See *Johnson* v. *Continental Ins. Companies* (1988) 202 Cal.App.3d 477, 483-486 [248 Cal.Rptr. 412].)

The judgment is reversed with directions that a new judgment be entered granting declaratory relief to Mid-Century as prayed for in its complaint. Appellant to recover its costs on appeal.

Stone (W. A.), J., and Pettitt, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judical Council.