[No. C007050. Third Dist. Dec. 23, 1991.]

EVELIA JAUREGUI, Plaintiff and Appellant, v.
MID-CENTURY INSURANCE COMPANY, Defendant and Respondent.

**COUNSEL**

Brislain, Zink & Lenzi and Albert J. Lenzi, Jr., for Plaintiff and Appellant.

Kroloff, Belcher, Smart, Perry & Christopherson and Randy Lockwood for Defendant and Respondent.

**OPINION**

**RAYE, J.**—In this declaratory relief action, the trial court granted Mid-Century Insurance Company's motion for summary judgment finding a

provision of the insured's automobile insurance policy limited coverage for a permissive user of the insured vehicle. Evelia Jauregui, the injured third party, appeals. The pivotal issue presented is whether the policy language fixing damages to the limits of the financial responsibility law only if caused by a permissive driver is conspicuous and clear so as to preclude coverage under the contract of insurance. Finding as a matter of law the provision defeats the reasonable expectations of the insured and it is inconspicuous and vague, we reverse the judgment.

## STATEMENT OF FACTS

The insured, Larry King, was provided an "E-Z Reader Car Policy." The cover page of the policy states: "Your E-Z Reader Car Policy offers protection tailored to your needs. It is written in non-technical easy-to-read style. [¶] Please read this policy to make sure you understand the coverage it provides."

Part 1 of the E-Z Reader Policy described liability coverage. On the first page, an insured person is defined as:

"1.  You or any family member.

"2.  Any person using your insured car. . . ."

On the first column of the second page is a list of exclusions and on the second column are limits of liability. Both titles are set out in boldface type and separated from the surrounding policy language.

Following the section on limits of liability are three boldfaced titles: "Out of State Coverage" "Conformity with Financial Responsibility Laws" and "Other Insurance." Mid-Century contends the sentence under "Other Insurance" limits liability coverage for permissive users as follows: "We will provide insurance for an insured person, other than you or a family member, up to the limits of the Financial Responsibility Law only." Although the policy provided bodily injury coverage up to $100,000 per person and $300,000 per occurrence for the insured, Mid-Century claims bodily injury damages caused by a permissive user was limited to $15,000 per person and $30,000 per occurrence.

King's half-brother, Dennis Roderic, was driving the insured vehicle on August 31, 1986, and apparently caused an accident, injuring Jauregui. She refused a trial settlement offer of $25,000. On June 8, 1987, Mid-Century informed Jauregui the policy limited liability coverage for permissive drivers

and reduced its settlement offer to $15,000, the limits under the financial responsibility law. Jauregui again refused the offer and filed the underlying declaratory relief action. She appeals the judgment entered in favor of Mid-Century.

## I.

■ "Where no dispute surrounds material facts, interpretation of an insurance policy presents solely a question of law." (*Hauser* v. *State Farm Mut. Auto. Ins. Co.* (1988) 205 Cal.App.3d 843, 846 [252 Cal.Rptr. 569].) Since there is no factual dispute presented here, the trial court's interpretation of the policy language is not binding on the appellate court. (*Ibid.*; *Equitable Life Assurance Society* v. *Berry* (1989) 212 Cal.App.3d 832, 840 [260 Cal.Rptr. 819].)

The reasonable expectations of the insured are considered in a multitude of contexts. The scope of our inquiry is quite limited, however, and the role of the insured's expectations is commensurately narrow. Before us is an appeal from a summary judgment based on the trial court's interpretation of the insurance policy. It is not a review of a factual finding of the insured's expectations or the parties' intent based on the admission of extrinsic evidence. If the insured's expectations of coverage had been relevant in the context of an ambiguous policy, the trial court would have erred in granting a summary judgment because there would be glaring triable issues of fact. That is not our case. Rather, we engage exclusively in the academic review of policy language guided by well established rules of construction applied in the specialized arena of insurance coverage.

## II.

In *Mid-Century Ins. Co.* v. *Haynes* (1990) 218 Cal.App.3d 737 [267 Cal.Rptr. 248] the court upheld the insurer's construction of the challenged limitation for permissive users. The similar, if not identical, "E-Z Reader Car Policy" included the same disputed language "under the caption 'Other Insurance' that: 'We will provide insurance for an insured person, other than you or a family member, up to the limits of the Financial Responsibility Law only.' " (*Id.* at p. 739.)

The court summarily dismissed the injured's claim the policy language was inconspicuous and ambiguous. The court stated: "Haynes claims that this statement should have been 'put in the "Liability" section where a reasonable person would look for it.' However, as noted above, the sentence is in the 'Liability' section of the policy. Additionally, the language is

susceptible of but a single interpretation: that coverage for persons other than the named insured and family members is limited as set forth in the Financial Responsibility Law." (218 Cal.App.3d at p. 740.) Guided by fundamental principles governing construction of insurance contracts, we independently review the purported provision limiting coverage and, contrary to the holding in *Haynes*, find the limiting language inconspicuous and unclear.

Jauregui contends the permissive driver limitation is unenforceable because it was hidden in an inconspicuous section of the policy. We agree. The court in *Haynes* was satisfied the limitation of coverage was conspicuous since it was placed within the broad section on liability. The court ignored, however, how easily a layperson would be mislead by this E-Z Reader Policy.

First, an insured is defined on the first page of the policy, including permissive drivers under subparagraph 2: "Any person using your insured car." Second, the limiting language does not appear in either of the two sections where an insured would be likely to look. The permissive user limitation is not under the subsection entitled "Exclusions," nor does it appear under the subsection entitled "Limits on Liability." Rather the exclusionary language follows the subsection on "Other insurance," although the permissive user limitation has nothing to do with insurance from any other source.

As the court in *Ponder* v. *Blue Cross of Southern California* (1983) 145 Cal.App.3d 709 [193 Cal.Rptr. 632], aptly concluded: "Without further notice, an average insured could scarcely anticipate a subparagraph labeled this way would contain an exclusion . . . . [¶] This does not mean policy holders need never read beyond the boldfaced subheadings on the paragraphs which exclude coverage. But we do suggest it is difficult to characterize as 'conspicuous' an exclusion which is located under a subheading whose ordinary meaning does not encompass the condition purportedly excluded." (*Id.* at p. 723.)

Strictly construing the exclusionary language against the insurer (145 Cal.App.3d at p. 718), and reading this contract as a reasonable policyholder would read it (*National Auto. & Casualty Ins. Co.* v. *Stewart* (1990) 223 Cal.App.3d 452, 457 [272 Cal.Rptr. 625]), we cannot find the limitation adequately conspic- uous. The definition of the insured, appearing at the outset of the liability section, gives every indication that a permissive driver stands in the same position as the insured and receives the same coverage. The average policyholder would reach the same conclusion by continuing to read the policy. The coverage limitation for permissive drivers

is not contained within one of the subheadings that might alert the reader to a partial exclusion. Rather it appears within a subsection whose ordinary language would not encompass the limitation and is surrounded by language that has nothing to do with exclusions or limitations on coverage.

We find the insurer does not meet its stringent obligation to alert a policyholder to limitations on anticipated coverage by hiding the disfavored language in an inconspicuous portion of the policy. Unlike the court in *Haynes*, we are not satisfied that a policy purportedly designed for comprehensibility and clarity succeeds in limiting coverage as long as the language appears somewhere within the appropriate section. Here we find the average lay reader, attempting to locate coverage provided for permissive drivers, would have a difficult time locating the limiting language and is not required to conduct such an arduous search for camouflaged exclusions. The insurer has not satisfied its burden to display exclusionary language conspicuously.

### III.

Conspicuous placement of exclusionary language is only one of two rigid drafting rules required of insurers to exclude or limit coverage. ██ The language itself must be plain and clear. (*Ponder* v. *Blue Cross of Southern California, supra,* 145 Cal.App.3d 709, 723.) "This means more than the traditional requirement that contract terms be 'unambiguous.' Precision is not enough. Understandability is also required. To be effective in this context, the exclusion must be couched in words which are part of the working vocabulary of average lay persons." (*Ibid.; National Auto. & Casualty Ins. Co.* v. *Stewart, supra,* 223 Cal.App.3d at p. 458.)

██ Jauregui contends the general reference "to the limits of the Financial Responsibility Law" was not understandable to the average policyholder. She argues a layperson is not expected to know what body of statutory law encompasses the financial responsibility law nor understand the substantial reduction in coverage a permissive user was provided in comparison to the other insureds under the policy.

The monetary limits of coverage are not specified, nor is any reference made to the statutes embodying the financial responsibility law. The language is not ambiguous, neither is it understandable to the average layperson. An insurer drafting an "E-Z Reader Policy" could surely use simple, nontechnical verbiage to inform the policyholder coverage for permissive users was $85,000 less than that provided the other insureds.

Insisting the reference to the Financial Responsibility Law is plain and clear, Mid-Century relies on *Mid-Century Ins. Co.* v. *Haynes, supra,* 218

Cal.App.3d at pages 740-741 and *Mid-Century Ins. Co.* v. *Bash* (1989) 211 Cal.App.3d 431, 439 [259 Cal.Rptr. 382]. The *Haynes* court simply ignored the argument the terminology "Financial Responsibility Law" was not defined and pointed out the $15,000 limitation under Vehicle Code section 16000 et seq. The court failed to discuss whether a layperson reading the policy would understand how coverage had been limited to $15,000 or even where to ascertain the information. Although "Financial Responsibility Law" may be an obvious reference to the Vehicle Code to lawyers and judges, we hold it is too vague to meet the stringent obligation of an insurer to limit coverage in plain and clear language. (*National Auto. & Casualty Ins. Co.* v. *Stewart, supra,* 223 Cal.App.3d at p. 457; *State Farm Mut. Auto. Ins. Co.* v. *Eastman* (1984) 158 Cal.App.3d 562, 566 [204 Cal.Rptr. 827].)

Nor was the issue squarely addressed in *Mid-Century Ins. Co.* v. *Bash, supra,* 211 Cal.App.3d at page 434. The court wrote: "The sole legal issue presented is whether Mid-Century's policy provides separate coverage under the 'per occurrence' limits of liability for damages for loss of consortium claimed by wife, following a settlement of 'per person' limits with her husband. [¶] We hold the above policy provisions to be unambiguous, clearly including any loss of consortium claim in the 'each person' liability limits for injury to any one person in any occurrence. We further find that the phrase 'financial responsibility law' clearly refers to a specific body of statutory law, and that under the California Financial Responsibility Law there is no requirement that separate limits be provided for loss-of-consortium claims."

Interestingly, the relevant policy provisions appeared within the subsection "Limits of Liability." The limitation read: "1. The bodily injury liability limit for each person is the maximum for bodily injury sustained by one person in any occurrence. Any claims for loss of consortium or injury to the relationship shall be included in this limit. If the financial responsibility law of the place of the accident treats the loss of consortium as a separate claim, financial responsibility limits will be furnished." . . .' " (*Mid-Century Ins. Co.* v. *Bash, supra,* 211 Cal.App.3d at p. 435, internal quotation marks omitted.)

The wife argued that under the laws of the State of California, she was entitled to damages for loss of consortium, even though the financial responsibility laws did not provide for separate coverage. We agree with the court in *Bash,* that the limitation was very plain and clear. The policy states, "Any claims for loss of consortium . . . shall be included in this limit." Not only is the provision appropriately placed under "Limits of Liability," but it is simply explained in understandable language. Unlike the policy language

before us, reference to the financial responsibility laws was made to potentially broaden coverage in those jurisdictions in which the financial responsibility laws provided separate coverage. Moreover, the policyholder did not have to understand the limits of the financial responsibility law to understand the minimum coverage provided. The insurer clearly had informed the policyholder that loss of consortium was included in the limitation.

Here, however, the insured was expected to either know the financial responsibility law provided limits of $15,000 per person or know the discrete body of statutory law was set forth within section 16000 et seq. of the Vehicle Code. Without this level of sophistication, the policyholder could not ascertain the coverage provided for permissive users. In short, the insurer presumed a level of sophistication and knowledge beyond that of an ordinary layperson and, therefore, the policy provision purporting to limit coverage did not satisfy the requisite plain and clear criteria.

## IV

■ Protection of the insured's reasonable expectation of coverage underlies the rules of construction dictating that we construe exclusionary language against the insurer (*Equitable Life Assurance Society* v. *Berry, supra,* 212 Cal.App.3d at p. 837) and demands plain and clear language as well as conspicuous placement to avoid or limit coverage. ■ Our assessment of reasonable expectations based on the policy language is a question of law. (*National Auto & Casualty Ins. Co.* v. *Stewart, supra,* 223 Cal.App.3d at p. 461.) On this record, we are not at liberty to consider the alleged subjective beliefs of the insured at the time he purchased this automobile insurance policy. We are restricted to a review of the language chosen by Mid-Century and the rules of construction designed to favor the insured.[1]

■ Mid-Century's attempt to dispel the policyholder's reasonable expectation of coverage failed miserably. By inconspicuously placing the

---

[1]Our dissenting colleague hypothesizes an insured would not reasonably expect coverage for "an unknown parade of future permissive users" comparable to the coverage provided the other insureds under the policy. It is not our role to speculate on the policyholder's abstract expectations, but rather to consider reasonable expectations defined by the insurer's policy language. (See *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 272-273 [54 Cal.Rptr. 104, 419 P.2d 168].) We must apply well-accepted rules of construction of insurance contracts to ascertain what reasonable expectations were created by the insurer in drafting its E-Z Reader Car Policy. Plaintiff could reasonably expect, based on the policy's definition of insured, that coverage extended to "[a]ny person using [his] insured car." Having created a reasonable expectation of coverage for permissive users coextensive with that of the named insured, defendant was required to cast coverage restrictions in plain and clear language which was conspicuously displayed.

exclusionary language applicable to permissive users, the insurer limited coverage on the second page that it purportedly provided on the first. Moreover, even if the policyholder fortuitously found the hidden exclusion, it is unlikely he would have understood the significance of the reduction in anticipated coverage because the insurer referred only to the limits of the financial responsibility law.

Cumulatively, the inclusion of the limitation on permissive use coverage not only defeated the insured's reasonable expectation of equivalent coverage for all insureds but also defeated the purported purpose of the insured's E-Z Reader Policy. Mid-Century can differentiate coverage for permissive users, but it must do so in plain, clear and conspicuous language. Although Mid-Century advertised its policy as an "E-Z Reader," the disputed limitation was neither easy to find nor easy to understand.

The judgment is reversed. Jauregui is awarded costs on appeal.[2]

Carr, Acting P. J., concurred.

**MARLER, J.**—I dissent.

The majority refuses to enforce the clause of the insurance contract limiting the coverage of permissive users of the insured automobile on the grounds the clause is inconspicuous and unclear, and defeats the reasonable expectations of the insured.

The majority applies the requirements of conspicuity and clarity without explaining why it applies to the clause in question. Insurance contracts are subject to rules of construction and interpretation which are different from ordinary contracts. Usually being characterized as adhesion contracts, all ambiguities are interpreted in favor of the insured. (*Ponder* v. *Blue Cross of Southern California* (1983) 145 Cal.App.3d 709, 718 [193 Cal.Rptr. 632].) There are no ambiguities here. The clause in question is quite precise in its meaning.

---

[2]Since we reverse the judgment because the exclusionary language was ineffective, we need not address the two other issues raised by Jauregui: 1) that the driver was a resident of the insured's house and 2) that Mid-Century is estopped from relying on the exclusion because she detrimentally relied on its postaccident conduct.

However, there are special rules for the enforcement of clauses which are exclusions from coverage.[1] Such clauses to be given effect must be "conspicuous, plain, and clear" (*Ponder v. Blue Cross of Southern California, supra,* 145 Cal.App.3d at p. 719). These requirements, however, do not apply unless the exclusion disappoints the reasonable expectations of the insured. Some authority indicates it is not entirely clear that such is the rule. (*National Auto. & Casualty Ins. Co. v. Stewart* (1990) 223 Cal.App.3d 452, 461 [272 Cal.Rptr. 625]; *Ponder v. Blue Cross of Southern California, supra,* at pp. 720-721.) However, it makes no sense to require a clause to be conspicuous, plain and clear in instances where the exclusion does not defeat the reasonable expectations of the insured. The majority views the issue of reasonable expectations of the insured as coterminous with the issue of whether the limitation is conspicuous, plain and clear, i.e., if the limitation is not conspicuous, plain and clear it defeats the reasonable expectations of the insured. However, this puts the cart before the horse. The requirement of a limitation being conspicuous, plain and clear does not arise *unless* enforcement of the limiting clause defeats the reasonable expectations of the insured. (See *Ponder v. Blue Cross of Southern California, supra,* 145 Cal.App.3d at p. 719.)

If a reasonable insured would not care if the exclusion or limiting clause applies, then such insured is not being deprived of his reasonable expectations of coverage. Such is the case here. Coverage for permissive users is included in automobile insurance policies because such coverage is required by Insurance Code section 11580.1, not because it is sought by a purchaser of insurance. That section further allows an insurance company to limit such coverage to the amount required by the financial responsibility law. It does not appear that an insured would reasonably expect high limits of coverage for an unknown parade of future permissive users regardless of their driving records or other factors involving increased risk. Persons buying insurance do so primarily to protect themselves and their families, not to gratuitously provide protection for others to whom they owe no duty. Neither are they motivated to provide insurance that provides benefit only to the permissive user and the victim of his negligence and no benefit to the insured.

An insurance company is entitled to limit the coverage in its policy as long as the limitation conforms to the law and is not contrary to public policy. (*National Auto. & Casualty Ins. Co. v. Stewart, supra,* 223 Cal.App.3d at p. 461; *Public Employees Ins. Co. v. Mitchell* (1985) 173 Cal.App.3d 814,

---

[1]Though it is not clear whether clauses *limiting* coverage are subject to the same rules as clauses *excluding* coverage, I need not reach that issue here, but for purposes of argument assume so.

817 [219 Cal.Rptr. 129].) The policy coverage and its limitation were expressly permitted by statute.

I would affirm.[2]

Respondent's petition for review by the Supreme Court was denied April 3, 1992. Panelli, J., Baxter, J., and George, J., were of the opinion that the petition should be granted.

---

[2]I do not discuss the other theories of plaintiff, i.e., that the permissive driver was a member of the insured's household and that the defendant is estopped to deny coverage. I find neither contention to be meritorious.