115 Cal.Rptr.2d 369 (2002)
95 Cal.App.4th 235
John R. MacKINNON et al., Plaintiffs and Appellants,
v.
TRUCK INSURANCE EXCHANGE, Defendant and Respondent.
No. E028662.
Court of Appeal, Fourth District, Division Two.
January 15, 2002.
Review Granted May 1, 2002.
*370 Law Offices of Arthur W. Francis, Jr., and Arthur W. Francis, Jr., Redondo Beach, for Plaintiffs and Appellants.
Sedgwick, Detert, Moran & Arnold, Lawrence E. Picone and Christopher R. Wagner, Los Angeles, for Defendant and Respondent.
Certified for Partial Publication.[*]

OPINION
GAUT, J.
Plaintiffs John R. MacKinnon, Christel V. MacKinnon, and John and Christel *371 MacKinnon Family Trust (collectively MacKinnon) appeal summary judgment entered in favor of defendant Truck Insurance Exchange (Track Insurance).
We consider whether a commercial comprehensive general liability (CGL) insurance policy exclusion, commonly referred to as a pollution exclusion, excludes coverage for a third party personal injury claim arising from spraying an apartment building with insecticide to exterminate yellow jackets.
MacKinnon contends the trial court erred in concluding as a matter of law that there was no coverage under the pollution exclusion. The trial court concluded that since a pesticide is a chemical, it was a pollutant within the policy definition of pollutant, and thus the pollution exclusion applied and excluded coverage. Mac-Kinnon argues that the exclusion is ambiguous and the exclusion does not apply because there was no environmental pollution.
MacKinnon also argues that there are factual issues as to whether Truck Insurance waived reliance on the pollution exclusion and whether it was estopped from asserting the exclusion after initially defending MacKinnon in the matter.
We conclude the pollution exclusion is clear and unambiguous as applied in this case, the exclusion applies as a matter of law, and coverage for injuries arising from the pesticide spraying incident is thus excluded under the pollution exclusion. We further conclude there are no material triable issues of fact and therefore affirm summary judgment.

1. Factual and Procedural Background

The following facts are undisputed. Truck Insurance issued a CGL insurance policy to MacKinnon, for the period of April 1996 to April 1997. The policy provided coverage for damages MacKinnon incurred as a result of personal injuries arising out of MacKinnon's business operations conducted at an apartment building owned and operated by MacKinnon. Under the business liability section of the insurance policy, the policy contained an exclusion commonly referred to in the insurance industry and by the courts as a "pollution exclusion."
Jennifer Denzin was a tenant in Mac-Kinnon's apartment building. She requested MacKinnon to spray to eradicate yellow jackets at the apartment building. MacKinnon hired a pest control company, Antimite Associates, Inc., to exterminate the yellow jackets. Antimite treated the apartment building for yellow jackets on several occasions in 1995 and 1996. On May 19, 1996, Denzin died in MacKinnon's apartment building.
Denzin's parents filed a wrongful death lawsuit against MacKinnon, Antimite, and other defendants, alleging that Denzin died as a result of exposure to "dangerous chemicals" sprayed at MacKinnon's apartment building. MacKinnon tendered his defense to Truck Insurance under the CGL insurance policy.
On November 10, 1997, Truck Insurance retained counsel and filed a responsive pleading to the complaint on behalf of MacKinnon. On December 23, 1997, Truck Insurance sent MacKinnon a letter advising him that, because an immediate response was necessary, Truck Insurance had referred the Denzin action to defense counsel in order to protect MacKinnon's interests. Truck Insurance added that it was still investigating the matter to determine if coverage existed. Truck Insurance added that it did not intend to waive any provisions of the insurance policy, and "Truck reserves all of its rights under the terms, exclusions, and conditions of any policies issued to you."
On June 3, 1998, Truck Insurance sent MacKinnon a letter advising that Truck *372 Insurance had concluded that the pollution exclusion precluded coverage for the Denzin action and therefore Truck Insurance would be withdrawing its defense within 30 days. Truck Insurance extended the withdrawal date to July 20,1998.
In June 1998, MacKinnon retained counsel to represent him in the Denzin action. MacKinnon, through his counsel, settled the Denzin action for $10,000 and then filed the instant insurance coverage action, claiming Truck Insurance owed Mac-Kinnon a duty to defend and indemnify him in the Denzin action. MacKinnon's action asserted causes of action for declaratory relief, breach of contract, and breach of the implied covenant of good faith and fair dealing.
Truck Insurance moved for summary judgment on MacKinnon's coverage claims on the ground the pollution exclusion, contained in the insurance policy issued by Track Insurance to MacKinnon, precluded coverage for the Denzin suit. MacKinnon opposed the motion. The trial court granted summary judgment based on the following findings: (1) The Denzin action alleged the decedent died as a result of exposure to a pesticide used to eradicate yellow jackets at her apartment building; (2) the pollution exclusion in the Truck Insurance policy was clear and unambiguous; (3) there was no potential for coverage for the Denzin action because the allegations in the Denzin complaint are excluded from coverage by the pollution exclusion; and (4) because there was no potential for coverage, Mac-Kinnon's breach of the good faith covenant cause of action also fails.

2. Summary Judgment Standard of Review

On appeal from a summary judgment entered in favor of the defendant, we review the trial court's decision de novo, applying the rule that a defendant is entitled to summary judgment if the record establishes as a matter of law that either none of the plaintiffs asserted causes of action can prevail or the plaintiff cannot establish one or more elements.[1]
"The first step of the review begins with an analysis of the pleadings, because `[t]he pleadings define the issues to be considered on a motion for summary judgment.' [Citation.] We next evaluate the moving defendant's effort to meet its burden of showing that plaintiffs cause of action has no merit or that there is a complete defense to it. Once the defendant has met that burden, the burden shifts to the plaintiff to show that a triable issue of material fact exists as to its complaint. If the filings in opposition raise triable issues of material fact the motion must be denied; if they do not, the motion must be granted [citations]."[2]

3. The Pollution Exclusion

MacKinnon contends the trial court erred in granting summary judgment because the pollution exclusion is ambiguous and inapplicable to nonenvironmental pollution, such as the spraying of a pesticide.

A. Principles of Insurance Policy Interpretation
An insurance policy is interpreted to effectuate the mutual intent of the parties.[3] If possible, we look solely to the *373 terms of the policy, and the clear and explicit meaning of the policy terms will govern our interpretation.[4] If the policy is ambiguous, that is, susceptible to more than one reasonable interpretation, we construe the ambiguity in favor of coverage.[5] But if a policy clearly excludes coverage, "we will not indulge in tortured constructions to divine some theoretical ambiguity in order to find coverage. [Citation.] An insurer is entitled to limit its coverage to defined risks, and if it does so in clear language, we will not impose coverage where none was intended. [Citation.]" [6]
However, "[Exclusionary clauses are subjected to heightened scrutiny. They must be conspicuous, clear and plain; if they do not meet this test, such clauses will be strictly construed against the insurer. [Citations.]"[7] "The policy should be read as a layman would read it and not as it might be analyzed by an attorney or an insurance expert. [Citation.]"[8]
Where there are no disputed material facts, interpretation of an insurance policy presents solely a question of law.[9] An appellate court is not bound by the trial court's interpretation and instead conducts its own independent review.[10] Whether a policy is ambiguous is also a question of law subject to our independent review.[11]

B. The Pollution Exclusion
MacKinnon contends that, at a minimum, Truck Insurance owes him a duty to defend him in Denzin's wrongful death lawsuit. He claims the pollution exclusion does not apply.
The pollution exclusion contained in the Truck Insurance policy states in relevant part: "We do not cover Bodily Injury or Property Damage: [¶] ... [¶] 2. Resulting from the actual, alleged or threatened discharge, dispersal, release or escape of pollutants: [¶] ... [¶] (d) at or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations: [¶] ... [¶] (2) if the pollutants are brought on or to the site or location by you or for you."
At the beginning of the policy, the policy states that words printed in bold type in the text of the policy are defined in the "Definitions" section. The term "pollutants" is defined in the policy as follows: "Pollution or Pollutantsmeans any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, *374 fumes, acids, alkalis, chemicals and waste materials...."
California state courts have concluded pollution exclusions unambiguously exclude coverage for environmental pollution, such as groundwater and soil contamination.[12] MacKinnon argues that, even though the exclusion may be clear as applied to environmental pollution, the exclusion is ambiguous as to whether it applies to the instant case, which does not involve environmental pollution.
We are unaware of any California state case law addressing the issue of whether the pollution exclusion excludes coverage of claims arising from nonenvironmental pollution, such as residential pesticide extermination. But there is divergent case law in other states, as well as in the federal courts, addressing this issue.[13] While such case law is not binding on this court and differs among the various jurisdictions, we consider it as reflective of the varying viewpoints on the issue.
The Kansas federal district court in its 1991 decision, Westchester Fire Ins. Co. v. City of Pittsburg, Kans.,[14] noted that the author of a 1990 law review commentary reported that "a majority of courts find the standard pollution exclusion clause contained in commercial general liability policies to be ambiguous."[15] But the Florida Supreme Court stated in its more recent 1998 decision, Deni Associates v. State Farm, etc.,[16] that a substantial majority of courts throughout the country "have concluded that the pollution exclusion is clear and unambiguous so as to preclude coverage for all pollution related liability."[17] The Deni court added that "State Farm and Farm Bureau together with their amici have cited more than 100 cases from 36 other states which have applied the plain language of the pollution exclusion clause to deny coverage."[18]
We recognize that these decisions include cases involving environmental pollution and pollution exclusions which contain differing language, such as the "sudden and accidental" exception. Nevertheless, the current general consensus appears to be that the exclusion is clear on its face, and in numerous instances the exclusion has been determined to be clear and applicable to nonenvironmental pollution such as pesticide exposure.[19]
For instance, in Deni Associates v. State Farm, etc.[20] the Florida Supreme Court *375 found in two consolidated cases that the pollution exclusion was unambiguous and precluded coverage for injuries caused by an ammonia spill from a blueprint machine and for bodily injuries from accidentally spraying bystanders with insecticide. The pollution exclusions in both cases were the same, and are almost identical to the exclusion in the instant case. The Deni court noted that "We cannot accept the conclusion reached by certain courts that because of its ambiguity the pollution exclusion clause only excludes environmental or industrial pollution."[21]
In reaching these conclusions, the Deni court quoted language from American States Insurance Co. v. F.H.S., Inc.,[22] stating: "F.H.S. asks that this court, in essence, ignore the policy definition of `pollutants' or, perhaps more accurately, limit the term so that it is defined in the manner employed by environmental engineers, and thereby create coverage not provided by the policy. The court reiterates that it is not free to rewrite the terms of the insurance contract where that contract is not ambiguous. In this case, regardless of what is or might be a preferable definition from F.H.S.'s standpoint, or what would be the definition of choice from [an environmental engineer expert's] perspective, or the perspective of the scientific community, the policy definition of `pollutant,' and the pollution exclusion construed as a whole is clear and unambiguous. Moreover, the claims that have been asserted against F.H.S. fall well within the exclusion."[23] This is equally true in the instant case. The exclusion language is clear and this court is thus not free to add limiting terms and language to the exclusion.
The Deni court further relied on the following reasoning from West American Insurance Co. v. Band & Desenberg[24] in refuting the insured's contention that the pollution exclusion should apply only to "environmental" pollution: "Band again relies on cases interpreting older versions of the pollution exclusion for this argument. In those cases, the courts first looked to the historical purpose of the pollution exclusion and held that the drafters intended the exclusion to limit coverage for clean-up costs imposed by EPA legislation. The courts then looked at the language requiring the discharge to be 'onto land, into the atmosphere, or into water' and interpreted that to mean that the exclusion was applicable only when the pollutants were discharged into the outside environment. However, as with Band's first argument, this pollution exclusion does not have the language interpreted by the other courts. Thus, the reasoning of those cases is inapplicable to the case at hand. Additionally, this Court cannot examine the history of the exclusion because the language is clear and unambiguous and to resort to history would, therefore, be contrary to Florida law."[25]
Here, MacKinnon relies heavily on the pollution exclusion history in advocating limiting the exclusion to environmental pollution. As explained above, reliance on such history is inappropriate since the exclusion language has changed significantly and differs from the language construed by the courts limiting the exclusion to *376 environmental pollution. In 1985 the insurance industry eliminated from the pollution exclusion the language requiring the discharge to be on "`land, the atmosphere or any water course or body of water.'"[26] Such language is not in the instant policy. Furthermore, consideration of such history is improper since we conclude the exclusion language is clear and unambiguous.
The Michigan Supreme Court in Protective National[27] also concluded the pollution exclusion clearly applied to spraying insecticide and was not limited to environmental pollution. In Protective National, a third party sued the city for damages sustained as a result of exposure to chemical pesticide sprayed by the city. The city sought coverage under a CGL policy and the insurer initially defended the city under a reservation of rights. The insurer filed a declaratory relief action and summary judgment motion claiming there was no coverage under the pollution exclusion. The trial court agreed and granted summary judgment. The Court of Appeal reversed, and the Michigan Supreme Court held the pollution exclusion applied and thus summary judgment was appropriately granted.[28]
The Protective National court concluded the exclusion language was clear and unambiguous and the pesticide was a substance to which the pollution exclusion clearly applied as a matter of law.[29] The court further stated that "It is almost beyond comprehension how anyone would seriously argue that such a pesticide is not an `irritant, contaminant or pollutant.' Similarly, on the basis of such evidence, we do not understand how anyone can seriously argue that the trial court improperly determined, for the purpose of granting Protective National's motion for summary disposition, that the pesticide was an `irritant, contaminant or pollutant' as required by the language of exclusion I in the policy. We believe the trial court was correct, under the circumstances, in finding that the pesticide was a substance to which the pollution exclusion applied."[30]
In response to the dissent's argument that the very title of the clause, "pollution exclusion," created ambiguity and indicated the exclusion only applied to environmental pollution, the Protective National court explained that the policy does not refer to or designate the exclusion as the "pollution exclusion." Rather, the designation has been created by litigants, the judiciary, and attorneys to describe the otherwise unnamed, untitled clause.[31] The court noted: "The plain language of exclusion I clearly applies to `smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids, or gases, waste material or other irritants, contaminants, or pollutants.' To hold, as the dissent would, that exclusion I should apply to exclude only acts of 'pollutants' would be to ignore the other words in exclusion I. We refrain from such attempts to rewrite clear and unambiguous language under the guise of interpretation. [Citation.]"[32]
*377 Here, also, the exclusion is not entitled, "pollution exclusion," and the plain language of the exclusion applies to an assortment of substances, including chemicals, contaminants, and irritants. The exclusion in the instant case states that the policy does not cover bodily injury resulting from the discharge of pollutants, and the term "pollutants" is clearly defined in the policy as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste materials." There is no language in the policy limiting the exclusion to environmental pollution. We thus refrain from rewriting the exclusion as limited to environmental pollution.[33]
In another pesticide case, Home Exterminating Co. v. Zurich-American Ins. Group,[34] the Maryland federal district held the pollution exclusion applied, but further concluded an extermination endorsement provided coverage despite the exclusion. In Home Exterminating, an exterminator brought a declaratory judgment action against its insurer to establish coverage under a commercial CGL policy for claims alleged in an underlying action arising from application of pesticides. Home Exterminating Company sprayed a crawl space in a customer's home for ants. The homeowner was in the house at the time and became ill from the insecticide. The homeowner sued the exterminator for negligence. In Home Exterminating Company's declaratory relief action, the trial court found there was coverage under the extermination endorsement and granted summary judgment in favor of the insured, Home Exterminating Company.
The insurance policy in Home Exterminating contained a standard pollution exclusion similar to the exclusion in the instant case. But Home Exterminating Company also purchased a "Pesticide or Herbicide Applicator Coverage" endorsement which expressly stated that pursuant to the extermination endorsement the pollution exclusion clause did not apply to exterminating and fumigating operations. The court therefore concluded that even though the pollution exclusion normally would have precluded coverage, there was coverage under the extermination endorsement. The Home Exterminating court stated: "It is patently clear on the face of this language that there is no coverage for bodily injury or property damage caused by pesticides under the main policy. Nonetheless, the `Pesticide or Herbicide Applicator Coverage' endorsement purports to restore coverage for injury claims as to which the pollution exclusion clause denies coverage."[35]
MacKinnon relies heavily on the Kansas federal district court decision, Westchester Fire Ins. Co. v. City of Pittsburg, Kans.[36] for the proposition that the exclusion is ambiguous, limited to environmental pollution, and does not apply to an isolated incident of insecticide exposure. The Westchester case arises from the City of Pittsburg spraying malathion from city vehicles. Two individuals claimed they suffered personal injuries as a result of breathing and ingesting the pesticide. At the time, Westchester Fire Insurance Company provided the city with coverage under a commercial CGL policy containing a pollution exclusion. The exclusion precluded *378 coverage for bodily injury arising out of the discharge of pollutants.
The Westchester federal district trial court denied Westchester's motion for summary judgment on the ground the pollution exclusion did not apply because it did not encompass injuries occurring from isolated exposure to insecticide during normal city operations.
MacKinnon's reliance on Westchester is misplaced for several reasons, the most notable of which is that the circumstances in Westchester were significantly different from those in the instant case. First, the Westchester decision was based on the reasonable expectations of the parties in contracting for insurance.[37] California courts do not apply the reasonable expectation doctrine in interpreting unambiguous insurance policies.[38]
Second, although it is not clear, it appears that the Westchester pollution exclusion clause contained the "sudden and accidental" exception, in which the pollution exclusion does not apply if the injury is caused by a sudden and accidental act. The Westchester court states in a footnote that, "Virtually every pollution exclusion clause to come under judicial scrutiny in recent years contains an exception providing for coverage where the bodily injury or property damage results from a discharge of pollutants that is `sudden and accidental.' [Citations.]"[39] The court adds that this language indicates an intention to distinguish between what is ordinarily considered pollution and incidents of an isolated and sudden nature which are better characterized as accidents in the operations or activities of the insured rather than environmental pollution.[40] The Westchester court consequently construed the pollution exclusion as not applying to the malathion spraying incident since it was sudden and accidental.
The pollution exclusion in the instant case does not contain the "sudden and accidental" exception to the pollution exclusion. The exclusion thus is applicable to incidents such as the pesticide spraying incident in this case even if they do not constitute environmental pollution.
Third, the Westchester court concluded that the exclusion only applied to environmental damage since the insurance industry originally added pollution exclusion clauses to limit liability for environmental damage.[41] Initially, the standard pollution exclusion contained language limiting the exclusion to discharges of pollutants "`into or upon land, the atmosphere or any water course or body of water.'"[42] But as already noted, this language was removed by the insurance industry from policies in 1985 and thus it can no longer be assumed that the pollution exclusion is limited solely to environmental pollution.
Fourth, in Westchester, the court concluded, for reasons this court does not agree with, that Malathion did not fall *379 within the following policy definition of pollutant: "`any solid, liquid, gaseous or thermal irritant or contaminant.'"[43] The Westchester court concluded that the terms "irritant" and "contaminant," "must be construed as substances generally recognized as polluting the environment. In other words, a `pollutant' is not merely any substance that may cause harm to the `egg shell plaintiff,' but rather it is a toxic or particularly harmful material which is recognized as such in industry or by governmental regulators."[44]
In the instant case, the definition of "pollutant" includes, not only irritants and contaminants, but also "chemicals." It is undisputed that the pesticide in question was a irritant, contaminant, and chemical,[45] and thus fell within the policy definition of "pollutant."
Also, as discussed above, the pollutant need not be recognized as polluting the environment and there is nothing in the policy definition of pollutant that requires a pollutant to be recognized in industry or by governmental regulators as a toxic or particularly harmful material. The California Court of Appeal in Legarra[46] rejected the insured's contention that, under the policy pollution exclusion, a pollutant, such as petroleum, must be listed as a hazardous substance under the California Health and Safety Code. The Legarra court stated that "The pollution exclusion does not limit pollutants to hazardous substances; pollutants include `any solid, liquid, gaseous or thermal irritant or contaminant.'"[47]
The federal appellate court in Mississippi reached the same conclusion in American States Ins. Co. v. Nethery.[48] In American States an insurer filed a declaratory relief action to determine whether its insured under a CGL policy was entitled to coverage for a claim brought by a customer who alleged her hypersensitivity to chemicals was inflamed by fumes from paint and glue materials used to paint the interior of her home. The trial court granted partial summary judgment in favor of the insureds and the Court of Appeal reversed, holding that the pollution exclusion precluded coverage. The court concluded the exclusion's definition of "pollutant" covered any irritant, including paint and glue fumes.[49] The pollution exclusion in American States is essentially identical to the clause in the instant case.
The American States court stated, "[T]he absolute pollution exclusion does unambiguously exclude coverage for Nethery's claim. `Pollutant' is a defined term in the policy. Whether the policy definition comports with this court's notion of *380 the usual meaning of `pollutants' is not the issue; this court has no special expertise in writing insurance policies."[50]
The American States court found the court's holding in Westchester questionable and disagreed with its conclusion that the pollution exclusion applied only to environmental pollution,[51] noting "The pollution exclusion at issue encompasses more than traditional conceptions of pollution."[52] The American States court reiterated that it was improper for the court to engraft limitations on the exclusion when the exclusion language and definition of the terms pollution and pollutant are clear and unambiguous.[53]
Furthermore, MacKinnon's assertion that precluding coverage under the pollution exclusion for spraying insecticide at his apartment building conflicts with his reasonable expectations is unavailing. Since the exclusion terms are clear and unambiguous, we do not reach the level of analysis which allows us to consider the insured's expectations.[54]
Here, after examining the instant insurance contract and the undisputed facts, we conclude that the "pollution exclusion" is clear and unambiguous on its face and applies as a matter of law in the instant case to the spraying of pesticide at Mac-Kinnon's apartment building. We resist MacKinnon's urging to write into the policy limitations and terms which do not exist.

4. Triable Issues of Fact[**]

5. Disposition

The judgment is affirmed. Truck Insurance is awarded its costs on appeal.
We concur: HOLLENHORST, Acting P. J., and RICHLI, J.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part 4.
[1] Miscione v. Barton Development Co. (1997) 52 Cal.App.4th 1320, 1324-1325, 61 Cal. Rptr.2d 280; Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 853, 107 Cal.Rptr.2d 841, 24 P.3d 493; Code of Civil Procedure section 437c, subdivision (o)(2).
[2] Miscione v. Barton Development Co., supra, 52 Cal.App.4th at page 1325, 61 Cal.Rptr.2d 280; Aguilar v. Atlantic Richfield Co., supra, 25 Cal.4th at page 850, 107 Cal.Rptr.2d 841, 24 P.3d 493.
[3] Titan Corp. v. Aetna Casualty & Surety Co. (1994) 22 Cal.App.4th 457, 469, 27 Cal. Rptr.2d 476.
[4] AIU Ins. Co. v. Superior Court (1990) 51 Cal.3d 807, 822, 274 Cal.Rptr. 820, 799 P.2d 1253; Titan Corp. v. Aetna Casualty & Surety Co., supra, 22 Cal.App.4th at page 469, 27 Cal.Rptr.2d 476.
[5] Titan Corp. v. Aetna Casualty & Surety Co., supra, 22 Cal.App.4th at page 469, 27 Cal. Rptr.2d 476.
[6] Titan Corp. v. Aetna Casualty & Surety Co., supra, 22 Cal.App.4th at page 469, 27 Cal. Rptr.2d 476.
[7] Merrill & Seeley, Inc. v. Admiral Ins. Co. (1990) 225 Cal.App.3d 624, 630, 275 Cal.Rptr. 280.
[8] Crane v. State Farm Fire & Cas. Co. (1971) 5 Cal.3d 112, 115, 95 Cal.Rptr. 513, 485 P.2d 1129.
[9] Jauregui v. Mid-Century Ins. Co. (1991) 1 Cal.App.4th 1544, 1548, 3 Cal.Rptr.2d 21.
[10] Jauregui v. Mid-Century Ins. Co., supra, 1 Cal.App.4th at page 1548, 3 Cal.Rptr.2d 21; Ponder v. Blue Cross of Southern California (1983) 145 Cal.App.3d 709, 716-717, 193 Cal. Rptr. 632.
[11] Titan Corp. v. Aetna Casualty & Surety Co., supra, 22 Cal.App.4th at page 469, 27 Cal. Rptr.2d 476.
[12] Titan Corp. v. Aetna Casualty & Surety Co., supra, 22 Cal.App.4th at pages 469-470, 27 Cal.Rptr.2d 476; Legarra v. Federated Mutual Ins. Co. (1995) 35 Cal.App.4th 1472, 42 Cal. Rptr.2d 101.
[13] Meridian Mut. Ins. Co. v. Kellman (6th Cir.Mich.1999) 197 F.3d 1178, 1182-1183; American States Ins. Co. v. Koloms (Ill.1996) 281 Ill.App.3d 725, 217 Ill.Dec. 30, 666 N.E.2d 699, 702.
[14] Westchester Fire Ins. Co. v. City of Pittsburg, Kans. (D.Kan. 1991) 768 F.Supp. 1463.
[15] Westchester Fire Ins. Co. v. City of Pittsburg, Kans., supra, 768 F.Supp. at page 1471, footnote 12.
[16] Deni Associates v. State Farm, etc. (Fla. 1998) 711 So.2d 1135, 1137.
[17] Deni Associates v. State Farm, etc., supra, 711 So.2d at page 1137; see also City of Salina, Kansas v. Maryland Casualty Company (1994) 856 F.Supp. 1467, 1476.
[18] Deni Associates v. State Farm, etc., supra, 711 So.2d at page 1137, footnote 2.
[19] See Deni Associates v. State Farm, etc., supra, 711 So.2d 1135; Protective National Ins. Co. v. City of Woodhaven (1991) 438 Mich. 154, 476 N.W.2d 374; Home Exterminating v. Zurich-American Ins. Group (D.Md. 1996) 921 F.Supp. 318.
[20] Deni Associates v. State Farm, etc., supra, 711 So.2d at page 1138.
[21] Deni Associates v. State Farm, etc., supra, 711 So.2d at page 1138.
[22] American States Insurance Co. v. F.H.S., Inc. (S.D.Miss.1994) 843 F.Supp. 187, 190.
[23] Deni Associates v. State Farm, etc., supra, 711 So.2d at page 1138.
[24] West American Insurance Co. v. Band & Desenberg (M.D.Fla.1996) 925 F.Supp. 758.
[25] Deni Associates v. State Farm, etc., supra, 711 So.2d at page 1138.
[26] West American Ins. Co. v. Tufco Flooring East, Inc. (1991) 104 N.C.App. 312, 409 S.E.2d 692, 699.
[27] Protective National Ins. Co. v. City of Woodhaven (1991) 438 Mich. 154, 476 N.W.2d 374.
[28] Protective National Ins. Co. v. City of Woodhaven, supra, 476 N.W.2d at page 376.
[29] Protective National Ins. Co. v. City of Woodhaven, supra, 476 N.W.2d at pages 377, 379.
[30] Protective National Ins. Co. v. City of Woodhaven, supra, 476 N.W.2d at page 378.
[31] Protective National Ins. Co. v. City of Woodhaven, supra, 476 N.W.2d at page 378.
[32] Protective National Ins. Co. v. City of Woodhaven, supra, 476 N.W.2d at page 378.
[33] Deni Associates v. State Farm, etc., supra, 711 So.2d at page 1139.
[34] Home Exterminating v. Zurich-American Ins. Group (D.Md.1996) 921 F.Supp. 318.
[35] Home Exterminating v. Zurich-American Ins. Group, supra, 921 F.Supp. at page 323.
[36] Westchester Fire Ins. Co. v. City of Pittsburg, Kans., supra, 768 F.Supp. 1463.
[37] Westchester Fire Ins. Co. v. City of Pittsburg, Kans., supra, 768 F.Supp. at page 1470.
[38] Bank of the West v. Superior Court (1992) 2 Cal.4th 1254, 1264-1265, 10 Cal.Rptr.2d 538, 833 P.2d 545; All! Ins. Co. v. Superior Court, supra, 51 Cal.3d at page 822, 274 Cal.Rptr. 820, 799 P.2d 1253.
[39] Westchester Fire Ins. Co. v. City of Pittsburg, Kans., supra, 768 F.Supp. at page 1468, footnote 7.
[40] Westchester Fire Ins. Co. v. City of Pittsburg, Kans., supra, 768 F.Supp. at page 1468, footnote 7.
[41] Westchester Fire Ins. Co. v. City of Pittsburg, Kans., supra, 768 F.Supp. at page 1469.
[42] West American Ins. Co. v. Tufco Flooring East, Inc., supra, 409 S.E.2d at page 699.
[43] Westchester Fire Ins. Co. v. City of Pittsburg, Kans., supra, 768 F.Supp. at page 1470.
[44] Westchester Fire Ins. Co. v. City of Pittsburg, Kans., supra, 768 F.Supp. at page 1470.
[45] See Aetna Cas. & Sur. Co. v. Dow Chemical Co. (E.D.Mich. 1996) 933 F.Supp. 675, 683; Auten v. Employers National Ins. Co. (Tex. App.1986) 722 S.W.2d 468, 469-470; McQuade v. Nationwide Mut. Fire Ins. Co. (D.Mass.1984) 587 F.Supp. 67, 68; American States Ins. Co. v. Nethery (5th Cir.1996) 79 F.3d 473, 476, 477; Protective National Ins. Co. v. City of Woodhaven, supra, 476 N.W.2d at page 378.
[46] Legarra v. Federated Mutual Ins. Co., supra, 35 Cal.App.4th at page 1481, 42 Cal.Rptr.2d 101.
[47] Legarra v. Federated Mutual Ins. Co., supra, 35 Cal.App.4th at page 1481, 42 Cal.Rptr.2d 101.
[48] American States Ins. Co. v. Nethery, supra, 79 F.3d 473.
[49] American States Ins. Co. v. Nethery, supra, 79 F.3d at page 474.
[50] American States Ins. Co. v. Nethery, supra, 79 F.3d at pages 475-476.
[51] American States Ins. Co. v. Nethery, supra, 79 F.3d at page 477.
[52] American States Ins. Co. v. Nethery, supra, 79 F.3d at page 477.
[53] American States Ins. Co. v. Nethery, supra, 79 F.3d at pages 476-477.
[54] Bank of the West v. Superior Court, supra, 2 Cal.4th at pages 1264-1265, 10 Cal.Rptr.2d 538, 833 P.2d 545; AIU Ins. Co. v. Superior Court, supra, 51 Cal.3d at page 822, 274 Cal. Rptr. 820, 799 P.2d 1253.
[**] See footnote *, ante.