[No. B165390. Second Dist., Div. Five. Mar. 17, 2004.]

MERCURY INSURANCE COMPANY, Plaintiff, Cross-defendant and Respondent, v.
FRANCISCO AYALA et al., Defendants, Cross-complainants and Appellants.

[CERTIFIED FOR PARTIAL PUBLICATION[*]]

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part 1 of the Discussion.

**COUNSEL**

Wendy Rossi for Defendants, Cross-complainants and Appellants.

Wesierski & Zurek, Christopher P. Wesierski and Laura J. Barns for Plaintiff, Cross-defendant and Respondent.

**OPINION**

**ARMSTRONG, J.**—This case, which concerns uninsured motorist coverage, comes to us after judgment was entered in favor of respondent Mercury Insurance Company on its complaint for declaratory relief and on the cross-complaint for declaratory relief, breach of contract, and bad faith filed by the insureds, appellants Maria Medina and her husband Francisco Ayala. We affirm.

### Factual and Procedural Summary

In October of 1991, Medina was struck by a car driven by an uninsured motorist. She worked for Robinsons-May, and the accident took place in the employee parking lot. Robinsons-May, which is self-insured for workers' compensation claims, paid her medical and other expenses in an amount which exceeded $15,000.

Medina and Ayala[1] had automobile insurance with Mercury. The declarations page lists uninsured motorist bodily injury coverage limits of $15,000 per person and $30,000 per accident. Ayala and Medina made claims under that coverage. Mercury denied the claims, then sued for declaratory relief, seeking a declaration that both claims were subject to a single $15,000 per person limit and that the limit was exhausted because it was reduced by the

---

[1] The declarations page lists Ayala as the named insured and the policy defines "named insured" to include the spouse of the named insured.

workers' compensation benefits paid to Medina. Appellants cross-complained for declaratory relief, breach of contract, and bad faith.

Mercury moved for summary judgment on the complaint. The court granted the motion, finding that the claims were not covered. Mercury demurred to the amended cross-complaint on that ground. The demurrer was sustained and judgment was entered in Mercury's favor.

## Discussion

1. *Mercury's reliance on a specimen policy*[*]    -

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

2. *Coverage: Which limit applies?*[2]

Part IV of appellants' policy is entitled "Uninsured Motorists Coverage." In it, Mercury promises to pay "all sums which the insured . . . shall be legally entitled to recover as damages from the owner, or operator of an uninsured motor vehicle because of bodily injury, sustained by the insured, caused by accident and arising out of the . . . use of such uninsured motor vehicles . . . ."

The next part of the policy, titled "Part IV—Conditions," includes the provision that "The limit of liability stated in the declarations as applicable to 'each person' is the limit of the company's liability for all damages arising out of bodily injury sustained by one person in any one accident . . . . For the purposes of this provision, the 'bodily injury sustained by any one person' as used herein, shall be deemed to include all injury and damages for care, loss of consortium and injury to any interpersonal relationship sustained by others as a consequence of such bodily injury." The second quoted sentence is in boldface. At summary judgment, Mercury contended that the unambiguous language of this clause meant that the per person limit of $15,000, not the per accident limit of $30,000, applies to appellants' claims.

Appellants make two claims, that the per accident limit applies under the terms of the policy and that the per accident limit must apply, because Insurance Code section 11580.2 mandates that it does.

As to the policy itself, we agree with Mercury that the language is unambiguous. We thus give effect to its plain meaning (*Cunningham v.*

---

[*]See footnote, *ante*, page 1198.

[2] As Mercury notes in its brief, aside from contesting the use of the specimen policy, appellants do not contest Mercury's right to a set-off from the workers' compensation benefits paid to Medina.

*Universal Underwriters* (2002) 98 Cal.App.4th 1141, 1149 [120 Cal.Rptr.2d 162]), which is clearly the one Mercury ascribes to it—the per person limit applies. Numerous cases beginning with *United Services Automobile Assn. v. Warner* (1976) 64 Cal.App.3d 957 [135 Cal.Rptr. 34] have construed similar language in liability policies and have found that the language is unambiguous and means what Mercury, and we, say that it means.

Appellants seek a different result, citing *Abellon v. Hartford Ins. Co.* (1985) 167 Cal.App.3d 21 [212 Cal.Rptr. 852]. *Abellon*, like *Warner*, is a declaratory relief action filed by an insurer after its insured was in a car accident and was sued not only by the other driver, but by that driver's spouse on a loss of consortium claim. Neither case involves uninsured motorist coverage, but in both cases, the insurer sought a declaration that the per person, not the per accident, limit of the liability coverage applied. *Warner* found that the per person limit applied, and *Abellon* found that the per accident limit applied. However, in *Warner*, the policy language was like the language before us,[3] and in *Abellon* there was no similar language defining "bodily injury to any one person" to include the loss of consortium sustained by another. Instead, the insured in *Abellon* case had "no notice when it purchased the policy that loss of consortium damages fell within the purview of the 'per person' limitation." (*Abellon*, at p. 31.) *Abellon* does not help us construe appellants' policy.

██ We next consider appellants' statutory argument. Insurance Code section 11580.2 sets out the minimum uninsured motorist coverage which every car insurance policy must include. It is designed to ensure that drivers injured by uninsured motorists are protected to the same extent they would have been if the driver at fault had carried the statutory minimum of liability insurance. If a policy conflicts with the statute, the statute prevails. (*Hartford Casualty Ins. Co. v. Cancilla* (1994) 28 Cal.App.4th 1305, 1310 [34 Cal.Rptr.2d 302].)

Insurance Code section 11580.2 sets out the minimum coverage in two ways. First, it provides that unless the insured agrees in writing to the contrary, the uninsured motorist coverage must have limits at least equal to the limits of liability for bodily injury in the underlying policy of insurance. (Ins. Code, § 11580.2, subds. (a)(1), (m).) Appellants' policy complies with this requirement. The uninsured motorist bodily injury coverage limits are the same as the bodily injury limits in the rest of the policy. Indeed, the definition of "bodily injury sustained by any one person" is the same in both coverages.

---

[3] In *Warner*, the policy provided that " 'The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of the company's liability for all damages, including damages for care and loss of services, arising out of bodily injury sustained by one person as the result of any one occurrence.' " (*United Services Automobile Assn. v. Warner, supra,* 64 Cal.App.3d at p. 961.)

Insurance Code section 11580.2, subdivision (a)(1) also specifies that the uninsured motorist limits can be "no . . . less than the financial responsibility requirements specified in Section 16056 of the Vehicle Code insuring the insured . . . for all sums within the limits that he . . . shall be legally entitled to recover as damages for bodily injury or wrongful death from the owner or operator of an uninsured motor vehicle."

Vehicle Code section 16056, part of the financial responsibility law, sets out the limits which a *liability* policy must include. By referencing this statute, the Insurance Code fulfills the intent behind Insurance Code section 11580.2, recovery in the amount that would have been available if the uninsured motorist had had coverage.

Under the Vehicle Code, a liability policy must have a limit of "not less than fifteen thousand dollars ($15,000) because of bodily injury to or death of one person in any one accident and, subject to that limit for one person, to a limit of not less than thirty thousand dollars ($30,000) because of bodily injury to or death of two or more persons in any one accident . . . ." (Veh. Code, § 16056, subd. (a).)

We bear in mind that "California courts are required to construe the uninsured motorist statute (Ins. Code, § 11580.2) in favor of coverage wherever possible" (*Craft v. State Farm Mut. Auto. Ins. Co.* (1993) 14 Cal.App.4th 1284, 1291 [18 Cal.Rptr.2d 293]), but cannot find for appellants here. Appellants have cited no case which holds that a liability policy fails to comply with statutory minimums if it defines "per person" to include loss of consortium, but many cases have approved use of the per person limit in such cases, where the policy language so provides.

Once again, Mercury cites *United Services Automobile Assn. v. Warner, supra,* 64 Cal.App.3d 957, and appellants cite *Abellon v. Hartford Ins. Co., supra,* 167 Cal.App.3d 21. We think that *Warner* not only represents the majority view, but is the better-reasoned case.

*Warner* examined existing case law from California and elsewhere and determined that in liability policies, "[T]he principle consistently followed has been that where one person was injured or killed in the accident or occurrence, the single injury limit applied, regardless of the number of persons damaged as a result of that injury." (*United Services Automobile Assn. v. Warner, supra,* 64 Cal.App.3d at p. 963.)

In contrast, *Abellon,* which never directly addressed the cases cited by *Warner,* found that because a loss of consortium claim is a distinct and individual injury, application of the per occurrence limit would defeat the

public policy of this state as expressed by the Supreme Court in *Rodriguez v. Bethlehem Steel Corp* (1974) 12 Cal.3d 382 [115 Cal.Rptr. 765, 525 P.2d 669], in which our Supreme Court overruled earlier precedent and declared that in California each spouse has a cause of action for loss of consortium caused by a negligent or intentional injury to the other spouse by a third party. (*Abellon v. Hartford Ins. Co., supra,* 167 Cal.App.3d at p. 26.)

*Warner* also rejected the contention that a loss of consortium is a physical injury to the second spouse, holding that "The cause of action for loss of consortium does not arise out of a bodily injury to the spouse suffering the loss; it arises out of the bodily injury to the spouse who can no longer perform the spousal functions. It is the loss of conjugal fellowship, affection, society and companionship which gives rise to the cause of action. (*Rodriguez v. Bethlehem Steel Corp.* [1974] 12 Cal.3d 382, 405–406 [115 Cal.Rptr. 765, 525 P.2d 669].) [¶] Although a sensitive person may actually suffer physical illness as a result of being deprived of that conjugal affection, it is not that illness which gives rise to the claim. The fact that loss of consortium may have physical consequences does not convert the cause of action into an action for bodily injury to the spouse suffering the loss. Such consequences would be an element of damage, the consequential damage arising out of the bodily injury to the injured spouse." (*United Services Automobile Assn. v. Warner, supra,* 64 Cal.App.3d at pp. 964–965.)

Again, *Abellon* reached a different result, finding that loss of consortium could involve bodily injury, because emotional disturbances have physical aspects. (*Abellon v. Hartford Ins. Co., supra,* 167 Cal.App.3d at p. 27.)

█ We are unpersuaded by *Abellon's* reasoning. First, the public policy which led the Supreme Court to recognize loss of consortium claims does not compel the application of the per accident limit. Insurance policies which limit coverage by including loss of consortium claims in the per person limit do not refuse to recognize the cause of action, but merely limit insurance coverage which applies when one spouse is injured in an accident and the other spouse suffers from the consequences. █ And, while *Abellon* is surely right that the emotional distress suffered from a loss of consortium can, like any emotional distress, result in some physical symptoms, that possibility does not make a loss of consortium claim a bodily injury claim for purposes of Insurance Code section 11580.1 or Vehicle Code section 16056. "Although loss of consortium may have physical consequences, it is principally a form of mental suffering." (*Rodriguez v. Bethlehem Steel Corp., supra,* 12 Cal.3d at p. 401.) In contrast, *Warner's* reasoning on this point is good common sense and good legal sense.

We note, too, that elsewhere in insurance law, in the context of commercial general liability policies, "The cases overwhelmingly hold that the phrase

'bodily injury, sickness or disease' is plain and unambiguous and that coverage under the bodily injury clause is limited to physical injury to the body and does not include nonphysical, emotional or mental harm." (*Chatton v. National Union Fire Ins. Co.* (1992) 10 Cal.App.4th 846, 854 [13 Cal.Rptr.2d 318].)

Perhaps most importantly, *Warner* represents the mainstream. (See *State Farm Mutual Auto Ins. Co. v. Ball* (1981) 127 Cal.App.3d 568 [179 Cal.Rptr. 644], *Hauser v. State Farm Mut. Auto Ins. Co.* (1988) 205 Cal.App.3d 843 [252 Cal.Rptr. 569], *Mid-Century Ins. Co. v. Bash* (1989) 211 Cal.App.3d 431 [259 Cal.Rptr. 382], *Safeco Ins. Co. of America v. Simmons* (N.D.Cal. 1986) 642 F.Supp. 305.) Under these cases, appellants' claims could have been subject to a "per person" limit in the uninsured motorist's liability insurance, if that driver had had insurance. Thus, application of *Warner* is consistent with the Legislative intent that an uninsured motorist claimant will get the same compensation he or she would have gotten if the uninsured motorist had had insurance.

## DISPOSITION

The judgment is affirmed. Respondent to recover costs on appeal.

Grignon, J., concurred.

**TURNER, P. J.**—I concur in all of the analysis in the majority opinion except that I would resolve the admissibility of evidence issue on the judicial admission ground asserted by plaintiff.