Filed 9/25/18

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Amador)

----

| | |
|---|---|
| MARK ALAN JONES et al., | C084065 |
| Plaintiffs and Appellants, | (Super. Ct. No. 14-CV-C08864) |
| v. | |
| IDS PROPERTY CASUALTY INSURANCE COMPANY et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of Amador County, Robert F. Moody, Judge. Affirmed.

Law Offices of Charles Hastings and Charles L. Hastings; Keen & Keen and Charles E. Keen for Plaintiffs and Appellants Mark Alan Jones and Melanie Jones.

Woolls Peer Dollinger & Scher and H. Douglas Galt for Defendant and Respondent IDS Property Casualty Insurance Company.

Mayall Hurley and Wililam J. Gorham III for Defendants and Respondents Janet Buhler and Richard Buhler.


1

When a wife sues for loss of consortium after her husband is seriously injured in an automobile accident that is the defendant's fault, is her claim subject to the same per person limit of the defendant's insurance policy as her husband's claim for bodily injury? That is the issue presented in this case. All California cases except one have answered the question in the affirmative, finding the language of the policy was sufficient to aggregate the two claims. Here, the policy language reads: "The bodily injury liability limits for each person is the maximum we will pay as damages for bodily injury, including damages for care and loss of service, to one person per occurrence." Although the policy language at issue here differs slightly from the language in the published cases, we find it is sufficient to aggregate the two claims.

As we explain, the language makes clear that the damages for bodily injury include loss of consortium. Further, the policy language provides that so long as only one person suffered bodily injury, the per person limit applies. Although the plaintiffs here argue that the language "to one person" modifies "the maximum we will pay" rather than "bodily injury," we disagree. Because we agree with the trial court that the per person policy limit applies to *all* damages *derived from bodily injury* "to one person" rather than defining the maximum available payment to any single individual (that is, "to one person"), we affirm the judgment in favor of defendant IDS Property Casualty Insurance Company (IDS).

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2013, the trial court entered a judgment against respondents Janet and Richard Buhler following a traffic accident in which appellant Mark Alan Jones was seriously injured. By stipulation, the judgment awarded Mark $1,350,000 and his wife Melanie Jones $150,000 for loss of consortium.

The Buhlers had an automobile insurance policy with IDS that provided coverage of $250,000 for bodily injury for each person and $500,000 for each occurrence. The policy set forth the limits of liability for bodily injury:

2

1.  The bodily injury liability limits for each person is the maximum we will pay as damages for bodily injury, including damages for care and loss of services, to one person per occurrence.

2.  Subject to the bodily injury liability for each person, the bodily injury liability limit for each occurrence is the maximum we will pay as damages for bodily injury, including damages for care and loss of services, to two or more persons in one occurrence.

[¶] . . . [¶]

We will pay no more than these maximums regardless of the number of vehicles described in the declaration, Insured persons, claims, claimants, policies, or vehicles involved in the occurrence.

After IDS paid the Joneses $250,000, the per person limit, the Joneses brought suit against IDS and the Buhlers for declaratory relief. They sought a judicial declaration that under the terms of the policy, IDS had a duty to pay the full per person limits of $250,000, to both Mark Jones and Melanie Jones, for a total of $500,000, the per occurrence limit.

IDS moved for summary judgment. It argued that a single per person limit applied to both Mark's injuries and Melanie's loss of consortium resulting therefrom. It relied on *United Services Automobile Assn. v. Warner* (1976) 64 Cal.App.3d 957 (*Warner*) and *Mercury Ins. Co. v. Ayala* (2004) 116 Cal.App.4th 1198 (*Ayala*). Both cases held that a spouse's claim for loss of consortium was subject to the same per person policy limit as the injured spouse's damages. IDS distinguished *Abellon v. Hartford Ins. Co.* (1985) 167 Cal.App.3d 21 (*Abellon*), in which a divided panel of the Fourth Appellate District, Division 1 reached a different result.

The trial court (Howard, J.) denied the motion, finding that *Abellon* controlled. The order was signed by Judge Hermanson.

The Buhlers filed for bankruptcy in November 2013. The Buhlers and the bankruptcy trustee filed a cross-complaint against IDS, for failure to defend, breach of

3

the implied covenant, and breach of contract. They alleged IDS pursued its financial interests to the detriment of the Buhlers by claiming the applicable policy limit was only $250,000.

The Joneses filed an amended complaint. They added causes of action for fraud and negligent misrepresentation based on the allegedly false representation of IDS that the applicable policy limit was only $250,000.

IDS demurred to the fraud and negligent misrepresentation causes of action. The trial court (Day, J.) overruled the demurrer.

On the first day of the jury trial, the parties agreed that the court (Moody, J.) could first rule on the declaratory relief cause of action and certify that ruling for appeal pursuant to Code of Civil Procedure section 166.1.[1] The court ruled in favor of IDS, finding *Warner, Ayala,* and the dissent in *Abellon* persuasive. It certified the order for appeal.

The Buhlers and the bankruptcy trustee petitioned this court for a writ of mandate, seeking to overturn the trial court's declaratory ruling. This court denied the petition. (*Buhler v. Superior Court* (Sept. 30, 2016) C082814.)

IDS moved for a nonsuit or judgment on the pleadings on the false representation claims, arguing the declaratory ruling established that the claims were not false. The trial court agreed and granted the motion for judgment on the pleadings. The court entered judgment for IDS.

---

[1] "Upon the written request of any party or his or her counsel, or at the judge's discretion, a judge may indicate in any interlocutory order a belief that there is a controlling question of law as to which there are substantial grounds for difference of opinion, appellate resolution of which may materially advance the conclusion of the litigation." (Code Civ. Proc., § 166.1.)

4

## DISCUSSION

### I

### *Ruling on Request for Declaratory Relief*

The Joneses contend the trial court erred in ruling the per person limit of the policy applied instead of the per occurrence limit. They argue that since loss of consortium is an independent tort and not a derivative claim (*Rodriguez v. Bethlehem Steel Corp.* (1974) 12 Cal.3d 382), it is subject to a separate per person limit of the policy unless the policy clearly specifies that loss of consortium damages are aggregated with those of the injured spouse. They contend the IDS policy issued to the Buhlers did not contain the necessary language of aggregation.

IDS responds that the policy language was sufficient to aggregate the two claims. The trial court agreed. Because the interpretation of an insurance contract is a question of law, we review the court's decision de novo. (*In re First Capital Life Ins. Co.* (1995) 34 Cal.App.4th 1283, 1287.)

A. *Case Law*

A number of cases, decided after loss of consortium was recognized as an independent tort, have considered whether a claim for loss of consortium is subject to the same per person limit of the policy as the damages to the injured spouse. Each case turns on the language of the policy at issue; we consider these cases successively.

In *Warner, supra,* 64 Cal.App.3d at p. 961, the limitation of liability portion of the policy read: " 'The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of the company's liability for all damages, including damages for care and loss of services, arising out of bodily injury sustained by one person as the result of any one occurrence; the limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of the company's liability for all such damages arising out of bodily injury

5

sustained by two or more persons as the result of any one occurrence." The appellate court found this language "clear and free from ambiguity. The 'per person' limit applies to '*all damages, including damages for care and loss of services, arising out of bodily injury sustained by one person . . . .*' " (*Id.* at p. 962.) The court found the term "loss of services" covered loss of consortium. "Loss of consortium is not only similar in kind to damage for loss of services in that it arises out of the bodily injury sustained by the injured spouse, but actually includes loss of services as one of its elements." (*Ibid.*)

The *Warner* court noted that while the right to recover for loss of consortium had only recently been recognized, "the California courts have uniformly held that the 'per person' limit applies to claims for loss of services and other consequential damages to a person related to the person suffering bodily injury in an accident." (*Warner, supra,* 64 Cal.App.3d at p. 962.) "While the policy language in the cited cases was not always identical with the language used in appellant's policy, . . . the principle consistently followed has been that where one person was injured or killed in the accident or occurrence, the single injury limit applied, regardless of the number of persons damaged as a result of that injury." (*Id.* at p. 963.) "The cause of action for loss of consortium does not arise out of a bodily injury to the spouse suffering the loss; it arises out of the bodily injury to the spouse who can no longer perform the spousal functions. It is the loss of conjugal fellowship, affection, society and companionship which gives rise to the cause of action." (*Id.* at p. 964.)

In *State Farm Mutual Auto. Ins. v. Ball* (1981) 127 Cal.App.3d 568 (*Ball*), the appellate court followed *Warner*. There, the policy provided, " 'The limit of liability stated in the declarations as applicable to "each person" is the limit of the company's liability for all damages arising out of bodily injury sustained by one person in any one accident, and subject to this provision, the limit of liability stated in the declarations as applicable to "each accident" is the total limit of the company's liability for all such damages for bodily injury sustained by two or more persons in any one accident. For the

6

purposes of this provision the "bodily injury sustained by one person" as used herein, shall be deemed to include all injury and damages sustained by others as a consequence of such bodily injury.' " (*Id.* at p. 570.) The policy defined damages to include "care and loss of services." (*Id.* at p. 571.) The *Ball* court found it "even clearer" than in *Warner* that "the 'each person' liability limit is appropriate, since there is, in addition to the language found in the *Warner* policy, the further proviso that 'For the purposes of this provision the "bodily injury sustained by one person" as used herein, shall be deemed to include all injury and damages *sustained by others as a consequence of* such bodily injury.' " (*Id.* at p. 572.)

Two justices reached a different result in *Abellon, supra,* 167 Cal.App.3d 21, where the majority held that the wife's loss of consortium claim was a separate bodily injury and subject to the per occurrence limits of the policy. The policy language provided: " '1. The most we will pay for all damages resulting from bodily injury to any one person caused by any one accident is the limit of Bodily Injury Liability shown in this endorsement for "each person." 2. Subject to the limit for "each person," the most we will pay for all damages resulting from bodily injury caused by any one accident is the limit of Bodily Injury Liability shown in this endorsement for "each accident." ' " (*Id.* at pp. 24-25.) The policy limits for bodily injury were $250,000 for each person and $500,000 for each occurrence. (*Id.* at p. 25.) The majority found the loss of consortium claim was a separate injury from that of the injured spouse. (*Ibid.*) "If [the insurer] wants to limit liability in accidents where loss of consortium damages are sought, it should expressly provide that such damages are subject to the 'per person' limitation." (*Id.* at p. 33.)

The *Abellon* majority distinguished *Warner* due to the difference in the language of the policy. *Abellon* explained that in *Warner,* "[t]he 'per person' limitation defined 'all damages' as including damages for care and loss of services. Consequently, the court found the language of the policy clear and unambiguous." (*Abellon, supra,* 167

7

Cal.App.3d at p. 30.) The policy at issue in *Abellon* did not include "loss of services" in the damages subject to the "per person" limit. (*Id.* at p. 31.)

The dissent concluded that the policy in *Abellon* was "written in the plainest English possible. [¶] [I]t says the most Hartford will pay in damages resulting from bodily injury to any one person is $250,000." (*Abellon, supra,* 167 Cal.App.3d at p. 34 (dis. opn. of Lewis, J.).) "The simple, pure 'all' is the most comprehensive word in the English language" and required no elaboration or lists; it included loss of consortium. (*Ibid.*) "Since there is neither doubt nor ambiguity about what the contract of insurance provides, the court is not called upon to interpret it." (*Id.* at p. 35.)

This court construed a policy similar to the *Ball* policy in *Hauser v. State Farm Mut. Auto. Ins. Co.* (1988) 205 Cal.App.3d 843. There, the $250,000 limit of liability for bodily injury for "each person" was " 'the amount of coverage for all damages due to *bodily injury* to one person. "*Bodily injury* to one *person*" includes all injury and damages to others resulting from this *bodily injury*.' " (*Id.* at p. 845.) We rejected the argument that the wife could recover for loss of consortium under the higher ($500,000) per accident policy limits. "We cannot ignore the policy's unambiguous definition of 'bodily injury to one person.' Wife's loss of consortium resulted from her husband's injuries without which wife would have no claim at all. Under the policy provisions, wife's claim is compensable only under the 'each person' limit applicable also to her husband's claim." (*Id.* at pp. 846-847.) We distinguished *Abellon* based on the different policy language and noted that court was divided. (*Id.* at pp. 848-849.)

In *Mid-Century Ins. Co. v. Bash* (1989) 211 Cal.App.3d 431, 435 (*Bash*), the policy provided, " ' "The bodily injury liability limit for 'each person' is the maximum for bodily injury sustained by one person in any occurrence. Any claims for loss of consortium or injury to the relationship shall be included in this limit." ' " The court found the policy language similar to that in *Warner.* "The policy language under scrutiny here is plain and straightforward. It sets the 'per person' limit for injury sustained 'by

8

one person in any occurrence' as including claims for loss of consortium or injury to the relationship." (*Id.* at pp. 436-437.) "Wife would have no claim under the policy for damages for loss of consortium but for the injuries sustained by James Bash in the accident with Maldonado. Therefore, the loss of consortium is a loss sustained because of injuries to one person, and the 'per person' limits of liability apply." (*Id.* at p. 438.)

In *Ayala, supra,* 116 Cal.App.4th at page 1201, the policy provided, " 'The limit of liability stated in the declarations as applicable to "each person" is the limit of the company's liability for all damages arising out of bodily injury sustained by one person in any one accident . . . . For the purposes of this provision, the "bodily injury sustained by any one person" as used herein, shall be deemed to include all injury and damages for care, loss of consortium and injury to any interpersonal relationship sustained by others as a consequence of such bodily injury.' " The reviewing court found this language "unambiguous." (*Ibid.*) The court distinguished *Abellon* because the policy there lacked "language defining 'bodily injury to any one person' to include the loss of consortium sustained by another." (*Id.* at p. 1202.) As here, one party relied on *Abellon*, while the other relied on *Warner.* The court found *Warner* not only "represents the majority view, but is the better-reasoned case." (*Id.* at p. 1203.)

The per person limit language at issue here--"the maximum we will pay as damages for bodily injury, including damages for care and loss of services, to one person per occurrence"--is not identical to the policy language in any of these cases. Even the *Abellon* majority recognized that an insurer may limit its liability in accidents where loss of consortium damages are sought by "expressly provid[ing] that such damages are subject to the 'per person' limitation." (*Abellon, supra,* 167 Cal.App.3d at p. 33.) The question here is whether the IDS policy expressly so provides.

B. *Sufficiency of the Language of Aggregation*

The core of this dispute is whether the policy language here is sufficient to aggregate one spouse's damages for loss of consortium with the damages for bodily

9

injury to the injured spouse. In arguing that its policy expressly provides that damages for loss of consortium are subject to the same $250,000 per person limitation as the bodily injury itself, IDS focuses on the language of the policy that includes loss of consortium as damages for bodily injury, "damages for bodily injury, including damages for care and loss of services." The Joneses focus instead on the language that limits damages for bodily injury sustained by one person, "the maximum we will pay as damages . . . to one person."

IDS contends its policy language expressly includes loss of consortium in the $250,000 limit because it makes clear that damages "for care and loss of services" are included in any damages for bodily injury. The *Warner* court found this language covered loss of consortium. (*Warner, supra,* 64 Cal.App.3d at p. 962.) Thus, IDS argues, the per person policy limit includes damages for loss of consortium, resulting in a single per person limit for both Mark's damages for his significant injuries and Melanie's damages for loss of consortium.

The Joneses contend without language specifying that all damages, including loss of consortium, must be for bodily injury sustained by only one person, the policy does not expressly include loss of consortium within the $250,000 limit. Because, like *Abellon*, the IDS policy did not include this specific language, the Joneses contend the higher per occurrence limit applies.

In distinguishing *Warner*, the *Abellon* majority found the pertinent difference in policy language was the definition of damages in the per person limit. (*Abellon, supra,* 167 Cal.App.3d at pp. 30-31.) *Abellon* opined that in *Warner*, the " 'per person' limitation defined 'all damages' as including damages for care and loss of services. Consequently, the court found the language of the policy clear and unambiguous." (*Id.* at p. 30.) "*The Warner 'per person' limitation specifically defines 'all damages' as including loss of 'services'; Hartford's 'per person' limitation contains no such qualifying phrase.*" (*Id.* at p. 31.)

10

The *Ayala* court also focused on whether the per person limit included loss of consortium. "[I]n *Warner*, the policy language was like the language before us, and in *Abellon* there was no similar language defining 'bodily injury to any one person' to include the loss of consortium sustained by another. Instead, the insured in *Abellon* case had 'no notice when it purchased the policy that loss of consortium damages fell within the purview of the 'per person' limitation.' " (*Ayala, supra,* 116 Cal.App.4th at p. 1202.) The court noted that where a liability policy defines per person to include loss of consortium, "many cases have approved use of the per person limit in such cases, where the policy language so provides." (*Id.* at p. 1203.)

In *Allstate Ins. Co. v. Fibus* (9th Cir. 1988) 855 F.2d 660, the Ninth Circuit found *Abellon* was consistent with *Warner* and *Ball*. At issue in *Fibus* was which policy provision applied, an amendment that clearly aggregated a consortium claim with damages for bodily injury or the original version that was less clear. The original policy provision read: "[t]he limit stated for each person for bodily injury applies to all damages arising from bodily injury, sickness, disease, or death *sustained by one person* in any one occurrence." (*Id.* at p. 662, italics added.) Citing *Abellon,* the Ninth Circuit found, "Under California law, this language is ambiguous and would be interpreted to provide separate coverage for Celeste Foran's consortium claim." (*Id.* at p. 662.) The court found *Abellon* did not change California law; it was consistent with *Warner* and *Ball* because those cases aggregated consortium claims with the claims of the party primarily injured by expressly precluding separate coverage for consortium claims. (*Id.* at p. 662.) Although *Fibus* did not specify the exact language that constituted the language of aggregation, we assume it was the language defining damages for bodily injury to include loss of consortium. This is because the original policy in *Fibus* contained the "sustained by one person" language that the Joneses claim is necessary to express aggregation. The language did not, however, define damages to include loss of consortium or loss of services.

11

In a brief and confusing argument, the Joneses interpret IDS's point to be that defining damages to include loss of consortium is the *only* language sufficient to express aggregation and argue that this position has been rejected. They cite to *Campbell v. Farmers Ins. Exch.* (1968) 260 Cal.App.2d 105 (*Campbell*), disapproved on another point in *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 27-28, and *Westfield Ins. Co. v. DeSimone* (1988) 201 Cal.App.3d 598 (*DeSimone*). But IDS does not make this point, and the cited cases do not support the Joneses' position.

First, we interpret IDS's argument to be that language specifically defining damages to include loss of consortium is *sufficient* to express aggregation, not that it is the only way. Second, neither *Campbell* nor *DeSimone* supports the Joneses' position that the per occurrence limit applies. The uninsured motorist policy in *Campbell* provided a limit of $10,000 "on account of bodily injury sustained by one insured." (*Campbell, supra,* 260 Cal.App.2d at p. 108.) The court found this language "unambiguous" and limited liability to $10,000 where only one person suffered bodily injury. (*Id.* at p. 110.) The *Campbell* court concluded that where only one person is injured or killed in the accident, a single per person limit applies. (*Id.* at p. 109.) In *DeSimone*, heirs of a decedent killed in a multi-vehicle accident sought additional damages under the per occurrence limit of the tortfeasor's policy. The appellate court found that language in the policy, namely, "This [the maximum limit for all damages for bodily injury sustained by any one person] is the most we will pay *regardless of the number of . . . [claims] made*" made clear the per person limit applied. (*DeSimone, supra*, 201 Cal.App.3d at p. 602.) Further, the *DeSimone* court distinguished *Abellon* and embraced *Warner*. (*Id.* at pp. 603-604.) We note the IDS policy, like that in *DeSimone*, contains language providing that the maximum per person limit applies regardless of the number of claims.

Finally, as we next discuss, the IDS policy does provide the per person limit applies where there is bodily injury to only one person.

12

C. *Ambiguity in Insurance Contracts*

"It is a basic principle of insurance contract interpretation that doubts, uncertainties and ambiguities arising out of policy language ordinarily should be resolved in favor of the insured in order to protect his reasonable expectation of coverage. [Citations.]  It is also well established, however, that this rule of construction is applicable only when the policy language is found to be unclear.  [Citations.]  ' "A policy provision is ambiguous when it is capable of two or more constructions, both of which are reasonable." [Citation.]'  [Citation.]  Whether language in a contract is ambiguous is a question of law.  [Citation.]  We are also guided by the principle that words in an insurance policy must be read in their ordinary sense, and any ambiguity cannot be based on a strained interpretation of the policy language.  [Citation.]" (*Producers Dairy Delivery Co. v. Sentry Ins. Co*. (1986) 41 Cal.3d 903, 912.)

The Joneses contend the IDS policy is ambiguous and therefore should be interpreted to apply the higher per occurrence limit to their claims.  They contend the ambiguity is established by the fact that different courts and various individual judges have reached different interpretations of the policy at issue here and similar policies, as we have explained.

We reject this test of ambiguity.  A provision of an insurance contract " 'does not become ambiguous merely because the parties disagree about its meaning [citation], or because they can point to conflicting interpretations of the clause by different courts.' " (*MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 647.)  "Otherwise, a liability insurance company would lose every time the policyholder could find a court— anywhere, in any jurisdiction (even if that court was having a bad day)—that took the policyholder's side of a given question of law over the interpretation of contract language, and even if that court employed a rationale that would be generally at odds with California rules regarding interpretation of policy language.  It would mean that an insurance company could never argue in favor of its side in a pure question of law if there

13

were some court somewhere that had taken the opposite view." (*Griffin Dewatering Corp. v. Northern Ins. Co. of New York* (2009) 176 Cal.App.4th 172, 208, fn. omitted.)

The Joneses do not otherwise explain how the policy provision is ambiguous.

The Buhlers contend the policy can reasonably be read to apply the per person limit only to amounts *paid to one person*. As we have set forth, the per person policy limit reads: "The bodily injury liability limits for each person is the maximum we will pay as damages for bodily injury, including damages for care and loss of services, to one person per occurrence." The Buhlers read this language so that the phrase "to one person in one occurrence" modifies "the maximum we will pay" rather than the closer term "bodily injury." This reading results in the $250,000 limit's application to damage amounts *to be paid* to one person, rather than applying the limit to damages derived *from bodily injury* to one person. The Buhlers argue that because Mark and Melanie Jones are two people, and thus the payment for damages will be from IDS to more than one person, the higher per occurrence limit applies. They assert "a reasonable insured would expect that the 'per person' limitation in a policy would limit a single claimant's recovery, not multiple claimants."

This interpretation is contrary to the express language of the policy that the per person limit applies to damages for bodily injury to one person, "regardless of the number of . . . claims, claimants . . . ." Thus, the Buhlers' interpretation is not reasonable. (*Benedek .v PLC Santa Monica* (2002) 104 Cal.App.4th 1351, 1358 [interpretation that is contrary to express language is not semantically reasonable].) Further, any time loss of consortium is at issue, there are two persons damaged, the person suffering bodily injury and the spouse. If a claim for loss of consortium always triggered the per occurrence limit, there would be no need to define damages for bodily injury to include loss of consortium. "We must give significance to every word of a contract, when possible, and avoid an interpretation that renders a word surplusage." (*In re Tobacco Cases I* (2010) 186 Cal.App.4th 42, 49.)

14

The reasonable interpretation is that "to one person" modifies "bodily injury." Thus, the per person limit applies to all damages, including loss of consortium, arising from "bodily injury" "to one person." This language has the same effect and meaning as the phrase "arising out of bodily injury sustained by one person" in the policies at issue in *Warner, supra,* 64 Cal.App.3d at page 961, *Ball, supra,* 127 Cal.App.3d at page 571, *Bash, supra,* 211 CalApp.3d at page 435, and *Ayala, supra,* 116 Cal.App.4th at page 1198.

Our interpretation is also supported by the last antecedent rule. "The last antecedent rule provides that ' " 'qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote.' " ' [Citation.] Ordinarily the last antecedent rule applies to statutory construction, but it has also been stated to apply to contracts [citation] and has been used specifically to interpret insurance policy language. [Citations.]" (*ACS Systems, Inc. v. St. Paul Fire and Marine Ins. Co*. (2007) 147 Cal.App.4th 137, 150.)

The Joneses object to the application of the last antecedent rule, arguing it "is merely an aid to construction, applicable only where there exist uncertainties and ambiguities." (*Anderson v. State Farm Mut. Auto. Ins. Co.* (1969) 270 Cal.App.2d 346, 349.) "This merely means, however, that if the clear intent of the parties is opposed to the application of the rule, the rule must yield. No such situation is presented here." (*Id*. at pp. 349-350.) The same is true here; our interpretation is not based on the last antecedent rule, it is merely supported by it. As we have described, our interpretation is based on the clear language of the policy that applies the per person limit to damages-- including loss of consortium--for bodily injury to one person, regardless of the number of claims or claimants.

15

D.  *Financial Responsibility Law*

For the first time on appeal, the Buhlers advance an argument based on the California Financial Responsibility Law.  This law requires automobile liability coverage of at least $15,000 for bodily injury or death to one person and $30,000 for bodily injury or death to two or more persons.  (Veh. Code, § 16056.)  The Buhlers contend the IDS policy must provide a second per person limit for the loss of consortium because loss of consortium qualifies as bodily injury.

The assertion that loss of consortium qualifies as bodily injury under the financial responsibility law has been repeatedly rejected.  (*Vanguard Ins. Co. v. Schabatka* (1975) 46 Cal.App.3d 887, 894; *Warner, supra,* 64 Cal.App.3d at p. 965; *Ayala, supra,* 116 Cal.App.4th at p. 1204.)  Moreover, even if the financial responsibility law required coverage for loss of consortium, the IDS policy meets its coverage requirements.  Here IDS paid the Joneses $250,000, an amount far in excess of the $30,000 coverage requirement for bodily injury to two persons under Vehicle Code section 16056.

The trial court did not err in granting declaratory relief that a single per person limit of $250,000 applied to both Mark Jones' claim for damages for his injuries and his wife's claim for loss of consortium.

II

*Judgment on the Pleadings*

The declaratory ruling found the per person limit of the policy of $250,000 applied to the claims of both Joneses.  IDS argued this ruling established that its representation that the policy limit was $250,000 was not false, so the Joneses' claims for fraud and negligent misrepresentation fail.  The trial court agreed and granted IDS's motion for judgment on the pleadings as to the fraud and negligent misrepresentation claims.  The Joneses raise both substantive and procedural objections to this ruling.

The Joneses argue the declaratory ruling did not address all of the allegations of misrepresentation in the first amended complaint.  They contend the trial court ignored

16

the factual allegations in nine paragraphs. The first amended complaint alleges IDS repeatedly misrepresented its coverage obligation--the policy limit--as the $250,000 per person limit instead of the $500,000 per occurrence limit. In the reply brief, the Joneses assert: "This misrepresentation was not about the amount, but what coverage limit that amount represented."

IDS represented the applicable policy limit, its coverage obligation, was $250,000, the per person limit. The trial court found in the declaratory ruling, a ruling we affirm on appeal, that was the correct policy limit to apply to the situation at hand--claims for injury and loss of consortium arising from bodily injury to a single person. Because IDS correctly represented that the per person limit applied, rather than the per occurrence limit, there was no misrepresentation as to coverage limit. No allegations were ignored by the trial court; there was simply no tenable claim left to resolve.

The Joneses further contend that granting the judgment on the pleadings was procedurally improper for several reasons. They contend Judge Moody had no jurisdiction to reconsider Judge Day's earlier ruling in which she overruled IDS's demurrer to the misrepresentation claims. Second, they contend it was error to grant a judgment on the pleadings where a demurrer had been overruled on the same basis because there was not "a material change in applicable case law or statute" as required by Code of Civil Procedure, section 438, subdivision (g)(1). Third, they argue the trial court should have declared a mistrial because at the time of the declaratory ruling the jury was discharged without rendering a verdict.

We need not consider whether the trial court followed the proper procedure to adjudicate the misrepresentation claims because the Joneses fail to show any prejudice. "No judgment shall be set aside, or a new trial granted, in any cause . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13; see also Code Civ. Proc., § 475.)

Here, the trial court's ruling established there was no misrepresentation as to the policy limit, so entering judgment for IDS on the misrepresentation causes of action was not a miscarriage of justice.

Finally, the Joneses contend Judge Moody improperly overruled the prior ruling of another trial judge, acting as a "one-judge appellate court." In denying IDS's motion for summary judgment, Judge Howard ruled that *Abellon* was controlling. Judge Moody, in his declaratory ruling, followed *Warner, Ayala,* and the dissent in *Abellon.*

Although the two courts took opposing views of the law, the rulings addressed different matters. One denied a defense motion for summary judgment and the second declared the terms of the insurance policy. One did not "overrule" the other. More importantly, the Joneses ignore that they (as well as IDS) *agreed* to have Judge Moody rule on the request for declaratory relief and certify the matter for appeal, suspending the trial. "Generally, an appellant forfeits the right to attack error by expressly or impliedly agreeing at trial to the procedure objected to on appeal." (*Pfeifer v. John Crane, Inc.* (2013) 220 Cal.App.4th 1270, 1309.) Having agreed to seek a declaratory ruling, the Joneses cannot complain on appeal that they received one.

**DISPOSITION**

The judgment is affirmed.  IDS shall recover costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/s/
_____
Duarte, J.

We concur:

/s/
_____
Hull, Acting P. J.

/s/
_____
Murray, J.