Filed 8/22/22  Munoz v. Ruiz CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| LUIS MUNOZ, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> FELIX RUIZ et al., <br><br> Defendants and Appellants. | 2d Civil Nos. B313762, B316856 <br> (Super. Ct. No. 56-2021-00552690-CU-UD-VTA) <br> (Ventura County) |

Felix Ruiz and Oxnard Motorsports, Inc. (collectively, Ruiz) appeal from the unlawful detainer judgment following court trial. The court awarded the landlord unpaid rent and holdover damages, and a postjudgment award of attorney's fees.  The tenant contends the court: (1) erred when it concluded the lease term was one year, (2) abused its discretion when it amended the complaint to conform to proof, and (3) abused its discretion when it ordered attorney's fees.  We vacate the portion of the judgment for unpaid rent, modify the attorney fee award, and otherwise affirm.

FACTUAL AND PROCEDURAL BACKGROUND
*Lease negotiations*

Luis Munoz leased commercial property to Ruiz for use as a car dealership. Present during the lease negotiations were Munoz; his employee, Victor Jimenez; Ruiz; and general manager of Oxnard Motorsports, Julio Estrella. Ruiz left the meeting before the lease was signed.

Munoz initially requested a five-year lease. Estrella testified five years was too long because the city might shut them down due to COVID. He said one year would be "ludicrous" because it takes approximately three months to get a permit to operate. Both Estrella and Ruiz testified they requested two years and shook hands with Munoz for two years. But Munoz and Jimenez testified that Estrella and Ruiz wanted only one year, and that everyone agreed to one year. The lease was signed by Munoz and Jimenez, and by Estrella on behalf of Ruiz.

*Lease provisions*

The lease was adapted from a printed agreement with a previous tenant. Some language was whited out and some changes were handwritten.[1]

Under the heading "TERM OF LEASE," paragraph 3.1 stated: "the initial term of this Lease (the 'Term') shall be for a period of *ONE year commencing April 1st 2020* (the 'Lease Commencement Date'), and expiring on *March 31st 2021*." Paragraph 3.2 stated: "at any time commencing on or after *4-1-2020* Landlord shall have the absolute and unconditional right to early terminate the Lease" by "providing ninety (90) days advance written notice on or any time after *5-1-2020*." Under the

---

[1] Handwritten portions of the agreement are shown here in italics.

2

heading "RENT," paragraph 4.1 stated: "(b) for the period commencing on *4-1-2020* and continuing through *3-31-2021* Tenant shall pay Landlord Rent in the amount of *TEN* Thousand Dollars *$10,*000.00) per month; and (c) for the period commencing on *4-1-2021* and continuing through the expiration of the Term, Tenant shall pay Landlord Rent in the amount of *Eleven thousand Dollars (11,000.00* per month. *ON THE 2ND YEAR.*" An amendment incorporated into the lease stated that Ruiz "will pay $1000.00 per month towards the property taxes starting June 1st, 2020 until March 2021."

Jimenez wrote the dates in paragraph 3.1 and the dates and dollar amounts in paragraph 4.1. The evidence did not establish who wrote "*ON THE 2ND YEAR*" in paragraph 4.1.

*Termination of lease*

On December 11, 2020, Munoz gave Estrella a "90-DAY NOTICE TO QUIT." The notice stated that Munoz would seek possession of the property "AND SUCH DAMAGES AS MAY BE ALLOWED BY LAW IF YOU DO NOT QUIT." The notice did not demand payment of rent (which was not past due at that time). Munoz testified that he gave the notice "as courtesy, to . . . vacate the property by end of their lease." He said it was "[j]ust to remind them that the lease was going to be over in 90 days."

A few minutes after Estrella received the notice, Ruiz phoned Munoz "to discuss the situation about the new lease." In their discussion, the end of the lease was March 31, 2021.

Ruiz last paid rent in December 2020. He refused to pay rent unless Munoz extended the lease. Munoz declined to do so. Ruiz remained in possession of the property until June 2021.

3

*Initiation of litigation*

Munoz filed an unlawful detainer complaint demanding possession of the property based on "expiration of a fixed-term lease." The complaint requested holdover damages, and attorney's fees and costs. While the complaint did not allege service of a notice to pay rent or quit, the complaint identified unpaid rent of $33,000.

*Ruling and judgment*

After trial, the court granted Munoz's motion to amend the complaint to include a demand for unpaid rent of $33,000. The court also found that the lease created a fixed term of one year and awarded the following damages to Munoz: $33,000 in back rent for the months of January to March 2021, and $26,400.24 in holdover damages for the period of April 1 to June 11, 2021. The court granted Munoz's postjudgment motion for attorney's fees of $13,390 and costs of $580.

DISCUSSION

*Lease term*

The length of the lease term is significant because a tenant who fails to pay rent after the term expires becomes a tenant at sufferance and the landlord has the right to eject him as a trespasser. (*Peter Kiewit Sons' Co. v. Richmond Redevelopment Agency* (1986) 178 Cal.App.3d 435, 445.) Ruiz contends the trial court erred when it found the lease term was one year. We disagree.

"'We must give significance to every word of a contract, when possible, and avoid an interpretation that renders a word surplusage.'" (*Jones v. IDS Property Casualty Ins. Co.* (2018) 27 Cal.App.5th 625, 638; Civ. Code, § 1641.) An interpretation that paragraph 4.1 established a two-year term would render

4

meaningless the language in paragraph 3.1 that the "initial term" was "*ONE year* . . . expiring on *March 31st 2021*."

Ruiz relies upon Civil Code section 1651, which provides that written portions of a contract prevail over portions copied from a form.  This rule is of no assistance because both paragraphs 3.1 and 4.1 contain significant handwritten language.  Nor is Ruiz aided by Civil Code section 1654, which provides that "the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist," because the evidence did not establish who added the language about the second year in paragraph 4.1.

While the court concluded that "[t]he plain language of this lease is clear" that the term was one year, the court also relied on trial testimony to conclude there was a one-year lease.  Exercising our independent review, we find the language of the lease was ambiguous as to the lease term.  Thus, the court properly admitted extrinsic evidence to construe and interpret the lease.  (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165.)

"When the competent parol evidence is in conflict, and thus requires resolution of credibility issues, any reasonable construction will be upheld as long as it is supported by substantial evidence." (*Winet v. Price*, *supra*, 4 Cal.App.4th at p. 1166.)  "'[W]e view the record in the light most favorable to respondents, giving them the benefit of every reasonable inference and resolving all conflicts in their favor.  [Citation.] "[I]t is not our role to reweigh the evidence, redetermine the credibility of the witnesses, or resolve conflicts in the testimony."'" (*Greif v. Sanin* (2022) 74 Cal.App.5th 412, 437-438.)

Here, the court's finding that the lease was one year is supported by substantial evidence.  The court determined that

5

Ruiz's "credibility, that he could ill afford, nor would he accept, a one-year lease, is questionable at best." For example, Ruiz could not explain why, if he was unwilling to accept less than two years, he agreed that Munoz could terminate the lease early upon 90 days' notice any time after May 1, 2020. The court also credited the testimony of Munoz and Jimenez that during negotiations, the parties agreed to one year. And after Munoz served the 90-day courtesy notice, Ruiz refused to pay rent and sought a "new lease." The trial court did not err when it concluded the lease term was one year.

*Amendment to conform to proof*

Ruiz contends the trial court abused its discretion when it amended the complaint to conform to proof. We agree.

After trial, Munoz asked to amend the complaint according to proof to include $33,000 in unpaid rent for January through March 2021. He noted that this amount was written in the complaint, but he "failed to check the box" adjacent to that demand. The court granted the motion. The court stated that "any reasonable person looking at this" would conclude the box was meant to be checked. The court opined that the courts were "backlogged," and "in the name of judicial economy" it would be "an exercise in futility" to require a separate lawsuit for unpaid rent.

When the evidence at trial establishes unlawful detainer, the court must amend the complaint to conform to proof. (Code Civ. Proc., § 1173.) We review the order for abuse of discretion. (*Trafton v. Youngblood* (1968) 69 Cal.2d 17, 31.) The trial court found that Munoz meant to check the box demanding $33,000 in unpaid rent. But in allowing the amendment, the court abused its discretion because there was no proof of service of a notice to

6

pay rent or quit, which is required to obtain unpaid rent in an unlawful detainer action.

Because this unlawful detainer action is based on expiration of a fixed-term lease, it was properly filed without the service of a notice to quit, or to pay rent or quit. (Code Civ. Proc., § 1161, subd. 1; Civ. Code, § 1933, subd. 1; *McKissick v. Ashby* (1893) 98 Cal. 422, 425; *Camp v. Matich* (1948) 87 Cal.App.2d 660, 665.) But Munoz is not entitled to unpaid rent because the complaint did not allege, and the evidence did not show, that Ruiz was served with a notice to pay rent or quit with a demand for a specific or estimated amount of unpaid rent. (Code Civ. Proc., §§ 1161, subd. 2, 1161.1, subd. (a).)

"'[T]he unlawful detainer statute is strictly construed and . . . relief not authorized by that statute may not be given due to the summary nature of the proceedings.'" (*Saberi v. Bakhtiari* (1985) 169 Cal.App.3d 509, 515 (*Saberi*).) "'[A] distinction is made in [Code of Civil Procedure] section 1174 between *rent* which has accrued prior to termination of the tenancy and the *damages* caused by the unlawful detention after the termination.'" (*Ibid*.) In an unlawful detainer case, the court may award "rent due, *if* the alleged unlawful detainer be after default in the payment of rent." (Code Civ. Proc., § 1174, subd. (b), italics added.) "Rent . . . is recoverable only when the proceeding is *grounded upon* . . . default in the payment of rent." (*Saberi,* at p. 515, italics added; *Hudec v. Robertson* (1989) 210 Cal.App.3d 1156, 1163.) Munoz concedes, "While further notice was not required to file this action, a further notice—one to pay rent or quit—was required to recover the past due rent sought in the complaint."

7

Where unpaid rent cannot be sought in an unlawful detainer action, it can be sought by filing a separate civil action. (See *Hong Sang Market, Inc. v. Peng* (2018) 20 Cal.App.5th 474, 492-497.)  The amendment here is not justified by "judicial economy."  The "landlord's public policy arguments, for avoiding multiplicity of actions . . . cannot overcome unequivocal statutory restrictions."  (*Balassy v. Superior Court* (1986) 181 Cal.App.3d 1148, 1153.)

Munoz contends that Ruiz forfeited the objection regarding unpaid rent by failing to raise it before trial.  Not so.  In his answer, Ruiz alleged that paragraph 19, which included the unchecked box demanding unpaid past rent, was "false."  Ruiz also alleged an affirmative defense that the complaint failed to allege service of a notice to quit.

We also reject Munoz's contention that the lack of evidence of service of a notice to pay rent or quit was based on Ruiz's "improper objection" to the evidence.  "Under the doctrine of invited error, a party may not object to the sufficiency of the evidence to support a finding against him when the lack is the result of improper exclusion of evidence at his own instance." (*Chakalis v. Elevator Solutions, Inc.* (2012) 205 Cal.App.4th 1557, 1570 [relevance objection "not well taken" because evidence clearly relevant].)  Here, the court properly sustained Ruiz's relevance objection regarding service of a notice to pay rent or quit because the complaint was based solely on expiration of a fixed-term lease.

Because there was no evidence of a notice to quit or pay rent served on Ruiz, the court abused its discretion in granting the amendment.  Accordingly, the portion of the judgment for $33,000 in unpaid rent is vacated.

8

*Attorney's fees*

The court awarded Munoz attorney's fees pursuant to the attorney's fee provision of the lease. (Civ. Code, § 1717.) We review the court's award of attorney's fees for abuse of discretion. (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751.) As discussed below, we conclude that the award was based on a mathematical error and modify it.

Munoz's counsel submitted a motion for attorney's fees, supported by his declaration and an invoice. He stated that his usual hourly rate was $350. He charged an unlawful detainer "Standard Flat Fee" of $1,500 for document review, filing the complaint, and preparation for a "standard trial." He requested additional fees for 38.6 hours at the "discounted hourly rate" of $275 for responding to discovery requests, opposing a motion for summary judgment, and trial. He calculated total fees of $13,390.

"'California courts do not require detailed time records, and trial courts have discretion to award fees based on declarations of counsel describing the work they have done and the court's own view of the number of hours reasonably spent. [Citations.]'" (*Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 698.) The court may reasonably rely on "block billing," which lists several tasks during various blocks of time, where, as here, the attorney's time was spent solely on contractual claims covered by the attorney's fee provision. (*Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1010-1011.)[2]

---

[2] Ruiz takes issue with a billing item for "Grab burger" during the lunch recess at trial. This brief meal was included in

9

Nor did the trial court err when it included fees for "clerical" work counsel performed, such as filing documents and preparing proofs of service. An attorney's fee award may include clerical services, which are typically included in the attorney's hourly rates. (*City of Oakland v. McCullough* (1996) 46 Cal.App.4th 1, 7.) In including those fees, the court properly considered that counsel was a sole practitioner with only a part-time assistant.

But the order was based in part on a mathematical error by counsel. The court ordered attorney's fees of $13,390, which counsel said was based on a flat fee of $1,500 plus 38.6 hours at $275 per hour. The correct calculation is $12,115 ($1,500 plus 38.6 hours multiplied by $275).

The court's order stated that attorney's fees were determined by the lodestar method of multiplying the number of hours reasonably expended by a reasonable hourly rate. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131-1132.) Although the court stated that reasonable rates for attorney services in Ventura County range from $250 to $450 per hour, those rates were not included in the declaration or other pleadings upon which the motion was based, and the court gave no indication that it based the award on a rate other than the $275 per hour requested by counsel. The court stated that the attorney fee request was based on 38.6 hours.

Based on the discrepancy in the amount of the attorney fee award, rather than subject the parties to the additional expense

a block of 1.25 hours that also included the entire morning session of trial, developing strategy, reviewing testimony, and developing argument. Inclusion of this item does not warrant reversal of the order.

and delay of a remand for recalculation, we modify the amount to $12,115.  (*Sagadin v. Ripper* (1985) 175 Cal.App.3d 1141, 1170.)

DISPOSITION

The judgment is vacated in part to strike the award of unpaid rent of $33,000.  The attorney fee award is modified to $12,115.  In all other respects, the judgment and the postjudgment order awarding attorney's fees and costs are affirmed.  Each party shall bear their own costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

BALTODANO, J.

We concur:

YEGAN, Acting P. J.

PERREN, J.*

---

\* Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11

Julia Snyder, Commissioner

Superior Court County of Ventura

_____

Martin & McCormick, John D. Martin and Kathy J. McCormick for Defendants and Appellants.

Law Office of Ball & Yorke and Esther R. Sorkin for Plaintiff and Respondent.